TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00483-CV






Southwest Intelecom, Inc. d/b/a Intelecom, Inc., Appellant



v.



Hotel Networks Corp., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 98-05142, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING







 Appellant Southwest Intelecom, Inc. d/b/a Intelecom, Inc. ("Intelecom") sued Hotel
Networks Corporation ("HNC"), appellee, seeking monetary damages and declaratory relief based
on allegations of fraud in the inducement, failure of consideration, and breach of contract. 
Interpreting a provision in an agreement between the parties as selecting Ramsey County,
Minnesota, as the exclusive forum for all suits related to the agreement, the trial court dismissed
Intelecom's claims. Because we do not interpret this provision to provide the courts of Minnesota
with exclusive jurisdiction over disputes arising out of the agreement, we reverse the order of
dismissal and remand the cause for further proceedings.


FACTUAL AND PROCEDURAL BACKGROUND


 Intelecom is a Texas corporation located in Austin that offers telecommunications
services worldwide. HNC is a Nevada corporation that maintains its headquarters in Minnesota. 
HNC also operates in the telecommunications sector. After a period of negotiation, on September
25, 1997, Intelecom and HNC entered into an agreement (hereinafter "Initial Agreement") that
proved to be the first in a series of agreements under which HNC was to provide operator services
to Intelecom in exchange for specified consideration. The Initial Agreement included the
following clause: "8.9 Applicable Law. This Agreement shall be governed by the laws of the
State of Minnesota. The Parties stipulate to jurisdiction and venue in Ramsey County, Minnesota,
as if this Agreement were executed in Minnesota." (Hereinafter "jurisdiction clause.")

 On December 15, 1997, a second agreement between the parties, untitled, went into
effect regarding the exclusivity of their relationship in the Mexican telecommunications sector
(hereinafter "Exclusivity Agreement"). The first line of this agreement reads: "Agreement
between Hotel Networks & Intelecom/Helix to establish mutual exclusivity for Mexico, beginning
on December 15, 1997 for the marketing of Hotel Networks/Callex services in Mexico." The
Exclusivity Agreement does not include a jurisdiction clause similar to that found in the Initial
Agreement. A third agreement was executed by Intelecom and HNC on December 29, 1997 and
December 22, 1997 respectively, but it contains no material provisions.

 Intelecom subsequently claimed that (1) HNC had fraudulently induced Intelecom
to enter into the Exclusivity Agreement, (2) the Exclusivity Agreement failed for lack of
consideration by HNC, and (3) HNC had breached the Exclusivity Agreement. HNC responded
to Intelecom's original petition with a special appearance, motion to dismiss, plea in abatement,
and original answer. In the motion to dismiss, HNC asserted that the Exclusivity Agreement
operated as an amendment to the Initial Agreement and was thus subject to the jurisdiction clause
included therein. Further, HNC argued that the jurisdiction clause was intended to operate as a
forum selection clause that provided the courts of Ramsey County, Minnesota, with exclusive
jurisdiction over all disputes arising out of both agreements.

 After a hearing, the trial court granted HNC's motion to dismiss, holding as a
matter of law that (1) the Exclusivity Agreement functioned as an amendment to the Initial
Agreement and was therefore subject to the jurisdiction clause, and (2) the jurisdiction clause
provided Minnesota with exclusive jurisdiction over all claims arising out of the Exclusivity
Agreement. Intelecom appeals from the order of dismissal.


DISCUSSION


 Intelecom argues that the trial court erred by: (1) interpreting the jurisdiction clause
to mandate that all actions arising out of the agreements be brought in Ramsey County, Minnesota;
(2) holding that the Exclusivity Agreement operates as an amendment to the Initial Agreement that
is subject to the jurisdiction clause; (3) enforcing the jurisdiction clause as a forum selection
provision despite evidence that the public's and witnesses' interests strongly disfavor enforcement;
and (4) failing to make findings of fact with regard to the public's and witnesses' interest in
enforcing the jurisdiction clause as a forum selection provision. We begin with Intelecom's first
point of error.

 Forum selection clauses are enforceable in Texas, provided that (1) the parties have
contractually consented to submit to the exclusive jurisdiction of another state, and (2) the other
state recognizes the validity of such provisions. See Accelerated Christian Educ., Inc. v. Oracle
Corp., 925 S.W.2d 66, 70 (Tex. App.--Dallas 1996, no writ); Busse v. Pacific Cattle Feeding
Fund #1, Ltd., 896 S.W.2d 807, 812-13 (Tex. App.--Texarkana 1995, writ denied) (citing
Greenwood v. Tillamook Country Smoker, 857 S.W.2d 654, 657 (Tex. App.--Houston [1st Dist.]
1993, no writ)). Even if these threshold criteria are met, however, Texas courts will not apply
forum selection clauses to tort actions alleging fraud in the inducement. See Busse, 896 S.W.2d
at 813; see also Pozero v. Alfa Travel, Inc., 856 S.W.2d 243, 245 (Tex. App.--San Antonio 1993,
no writ) (declining to apply forum selection clause to action brought under Texas Deceptive Trade
Practices Act). Moreover, Texas courts are not bound by the parties' selection of a forum with
regard to any cause of action if the interests of the public and potential witnesses strongly favor
jurisdiction in a forum other than that which the parties have selected. See Accelerated Christian,
925 S.W.2d at 71; Greenwood, 857 S.W.2d at 656. Before we reach issues related to enforcement
of forum selection clauses, however, we must interpret the language of the jurisdiction clause in
the Initial Agreement to determine whether the parties have in fact agreed to the exclusive
jurisdiction of another state.

 Interpretation of a writing is a legal matter that we review de novo. (1) See Fisk Elec.
Co. v. Constructors & Assocs., Inc., 888 S.W.2d 813, 814 (Tex. 1994). In interpreting the
jurisdiction clause of the Initial Agreement, our primary goal is to give effect to the written
expression of the parties' intent. See Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 741
(Tex. 1998); Reilly v. Rangers Management Inc., 727 S.W.2d 527, 529 (Tex. 1987). We must
read the provision in its entirety, striving to give meaning to every sentence, clause, and word to
avoid rendering any portion inoperative. See Balandran, 972 S.W.2d at 741. Parol evidence of
the parties' intentions is not admissible to aid our interpretation, but we must read the jurisdiction
clause in light of relevant surrounding circumstances. See id. If we believe that the clause is
subject to two or more reasonable interpretations, we may hold it to be ambiguous as a matter of
law. See Sage St. Assocs. v. Northdale Const. Co., 863 S.W.2d 438, 445 (Tex. 1993). We may
reach such a conclusion, if appropriate, despite the fact that neither party has explicitly raised the
issue of ambiguity. See id.

 We believe that the jurisdiction clause of the Initial Agreement requires that the
parties submit to jurisdiction in the courts of Ramsey County, Minnesota, in the event that a suit
related to the agreement is brought there. We do not, however, interpret the clause to mandate
that Minnesota courts have exclusive jurisdiction. The plain language of the jurisdiction clause
neither prohibits litigation in jurisdictions other than Ramsey County, Minnesota, nor provides that
Minnesota courts have exclusive jurisdiction over all claims arising out of the contract. In
contrast, every forum selection clause relied upon by a Texas court to dismiss an action has
contained such explicit language regarding exclusivity. See Accelerated Christian, 925 S.W.2d
at 69 ("In any legal action relating to this Agreement, [Accelerated] agrees (a) to the exercise of
jurisdiction over it by a state or federal court in San Francisco or San Mateo County, California; 
and (b) that if [Accelerated] brings the action, it shall be instituted in one of the courts specified
in subparagraph (a) above."); Greenwood, 857 S.W.2d at 655 ("[T]he parties hereby agree that
any legal action concerning this Agreement shall be brought in a court of competent jurisdiction
in the State of Oregon."); Barnette v. United Research Co., 823 S.W.2d 368, 369 (Tex. App.
--Dallas 1991, writ denied) (interpreting agreement providing "that 'the United States District
Court for the District of New Jersey or the Superior Court of New Jersey' would be used to
resolve disputes between the parties"); see also Bellair, Inc. v. Aviall of Texas, Inc., 819 S.W.2d
895, 897 (Tex. App.--Dallas 1991, writ denied ) ("I/We agree that . . . exclusive venue and
jurisdiction of any dispute or suit arising between Aviall and the undersigned shall lie within the
courts of the State of Texas . . . ."). In each of these cases, the parties chose language that clearly
reflected an intent to have all of their disputes resolved exclusively in the courts of a specific
jurisdiction. Such explicit language is absent from the present agreement.

 Rather than explicitly providing for exclusive jurisdiction and venue in Ramsey
County, Minnesota, the language and phrasing chosen by the parties in this case suggest that their
sole intent was to insure that both Intelecom and HNC would be subject to suit in the courts of
Ramsey County, Minnesota. In this regard, the parties' use of the modifying clause "as if this
Agreement were executed in Minnesota" seems to reflect a recognition that the agreement itself
had little or no connection to Minnesota that would support an exercise of jurisdiction over
Intelecom by the courts of that state. By stipulating to jurisdiction in Ramsey County "as if the
agreement were executed in Minnesota," the parties appear to have been creating a prophylactic
relation to that state sufficient to insure that Minnesota courts could exercise jurisdiction over the
parties. The critical point for our present purposes, however, is that execution of the agreement
in Minnesota would in no way prevent suits arising out of the agreement from being brought in
other interested jurisdictions such as Texas.

 We believe that use of the word "stipulate" also suggests that the parties simply
intended to submit to jurisdiction in Minnesota. As HNC notes in its brief, the word "stipulate"
means to "arrange or settle definitely." Black's Law Dictionary 1415 (6th ed. 1990). By
substituting this definition for the words "stipulate to" in the provision, we believe the parties'
intent becomes more clear: "The Parties [arrange or settle definitely] jurisdiction and venue in
Ramsey County, Minnesota, as if this Agreement were executed in Minnesota." So modified, the
provision does not provide for exclusive jurisdiction in Ramsey County, Minnesota; instead, it
merely settles any question of whether the courts of that state have jurisdiction.

 The trial court interpreted the jurisdiction clause to provide for exclusive
jurisdiction in Minnesota courts "because the provision would be meaningless if it were construed
to mean that either party could elect to assert jurisdiction in any other state." We disagree. 
Interpreting the provision to mean that both parties agree to jurisdiction and venue in Minnesota
(but not exclusively) enables HNC to sue Intelecom in HNC's headquarters state without worrying
about jurisdictional issues. Without the jurisdiction clause, it is at least arguable that a Minnesota
court would have been unable to exercise jurisdiction over Intelecom, since Intelecom has
apparently had little, if any, contact with that state.

 For these reasons, we hold that the jurisdiction clause of the Initial Agreement does
not provide Minnesota courts with exclusive jurisdiction to hear all disputes arising from the
agreements. As a consequence, the trial court erred in dismissing Intelecom's claims for lack of
jurisdiction because the parties had not consented to exclusive jurisdiction in another state.

 In light of this holding, we need not consider Intelecom's remaining points of error.


CONCLUSION


 Because we hold that the jurisdiction clause does not mandate that all suits related
to the agreements between the parties be brought in Minnesota, we reverse the trial court's order
of dismissal and remand the cause to that court for further proceedings.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Reversed and Remanded

Filed: July 15, 1999

Publish

1. In its brief, HNC relies on Miller v. Gann, 822 S.W.2d 283 (Tex. App.--Houston [1st Dist.]
1991), writ denied per curiam, 842 S.W.2d 641 (Tex. 1992), and Mercure Co. v. Rowland, 715
S.W.2d 677 (Tex. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.), to argue that we are
constrained in our review of this issue by an abuse-of-discretion standard. These cases, however,
provide the standard for reviewing a trial court's decision to dismiss an action based on "failure
to join an indispensable party." See Miller, 822 S.W.2d at 286 (quoting Mercure, 715 S.W.2d
at 680-81). They are therefore irrelevant to our present inquiry.


f the modifying clause "as if this
Agreement were executed in Minnesota" seems to reflect a recognition that the agreement itself
had little or no connection to Minnesota that would support an exercise of jurisdiction over
Intelecom by the courts of that state. By stipulating to jurisdiction in Ramsey County "as if the
agreement were executed in Minnesota," the parties appear to have been creating a prophylactic
relation to that state sufficient to insure that Minnesota courts could exercise jurisdiction over the
parties. The critical point for our present purposes, however, is that execution of the agreement
in Minnesota would in no way prevent suits arising out of the agreement from being brought in
other interested jurisdictions such as Texas.

 We believe that use of the word "stipulate" also suggests that the parties simply
intended to submit to jurisdiction in Minnesota. As HNC notes in its brief, the word "stipulate"
means to "arrange or settle definitely." Black's Law Dictionary 1415 (6th ed. 1990). By
substituting this definition for the words "stipulate to" in the provision, we believe the parties'
intent becomes more clear: "The Parties [arrange or settle definitely] jurisdiction and venue in
Ramsey County, Minnesota, as if this Agreement were executed in Minnesota." So modified, the
provision does not provide for exclusive jurisdiction in Ramsey County, Minnesota; instead, it
merely settles any question of whether the courts of that state have jurisdiction.

 The trial court interpreted the jurisdiction clause to provide for exclusive
jurisdiction in Minnesota courts "because the provision would be meaningless if it were construed
to mean that either party could elect to assert jurisdiction in any other state." We disagree. 
Interpreting the provision to mean that both parties agree to jurisdiction and venue in Minnesota
(but not exclusively) enables HNC to sue Intelecom in HNC's headquarters state without worrying
about jurisdictional issues. Without the jurisdiction clause, it is at least arguable that a Minnesota
court would have been unable to exercise jurisdiction over Intelecom, since Intelecom has
apparently had little, if any, contact with that state.

 For these reasons, we hold that the jurisdiction clause of the Initial Agreement does
not provide Minnesota courts with exclusive jurisdiction to hear all disputes arising from the
agreements. As a consequence, the trial court erred in dismissing Intelecom's claims for lack of
jurisdiction because the parties had not consented to exclusive jurisdiction in another state.

 In light of this holding, we need not consider Intelecom's remaining points of error.


CONCLUSION


 Because we hold that the jurisdiction clause does not mandate that all suits related
to the agreements between the parties be brought in Minnesota, we reverse the trial court's order