Opinion issued August 25, 2005
     












In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00039-CV




PHOENIX NETWORK TECHNOLOGIES (EUROPE) LIMITED, Appellant

V.

NEON SYSTEMS, INC. AND COMPUTER ASSOCIATES
INTERNATIONAL, INC., Appellees




On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 03-CV-127800




O P I N I O N

          Appellant, Phoenix Network Technologies (Europe) Limited (“Phoenix”),
appeals from a judgment dismissing without prejudice its claims against Neon
Systems, Inc. (“Neon”) and Computer Associates International, Inc. (“CAI”)
(together, “appellees”) based on a contractual forum-selection clause designating the
United Kingdom (“U.K.”) as the venue for suit. We determine whether (1) the forum-selection clause is valid and enforceable and (2) Neon, a non-signatory to the
agreement, may nonetheless enforce the agreement’s forum-selection clause. We
affirm.
Background
          Phoenix was an English company headquartered in the U.K. In 1996, CAI’s
predecessor, Phoenix Network Technologies, Inc., and Phoenix’s predecessor,
Diplomat Systems Limited, entered into an agreement (“the Distribution
Agreement”). Under the Distribution Agreement, CAI’s predecessor (Phoenix
Network Technologies, Inc.) granted to Phoenix’s predecessor (Diplomat Systems
Limited) the “non-exclusive right to license, sub-license, market, distribute and
support” CAI’s predecessor’s product, “Diplomat” software, within a territory
including mainly European countries. In 1997, Sterling Software, Inc. (“Sterling”)
purchased Phoenix Network Technologies, Inc.’s assets, including the Distribution
Agreement. In 2000, Neon contracted with Sterling to acquire certain rights to the
Diplomat software. Sterling at some point merged with CAI.
          In January 2003, Phoenix sued Neon and CAI in Fort Bend County, Texas. 
Phoenix alleged that Neon’s rights to the Diplomat software were subject to
Phoenix’s rights under the Distribution Agreement and that Neon had failed to
recognize Phoenix’s superior rights. Accordingly, Phoenix sued Neon for tortious
interference with the Distribution Agreement and with Phoenix’s prospective
business relations and for unfair competition. Although Phoenix also sued CAI for
tortious interference with Phoenix’s prospective business relations, Phoenix described
its claim against CAI to the trial court as one for breach of the Distribution
Agreement,


 and CAI appears to have interpreted Phoenix’s claim as including a
claim for breach of contract.
          Appellees moved to dismiss Phoenix’s claims under the Distribution
Agreement’s forum-selection clause. After two hearings, the trial court granted both
appellees’ motions and dismissed all claims without prejudice. The trial court did not
specify in the dismissal orders the basis for its ruling, and it did not enter fact findings
and legal conclusions.
Standard of Review
          A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit. Accelerated
Christian Educ., Inc. v. Oracle Corp., 925 S.W.2d 66, 70 (Tex. App.—Dallas 1996,
no writ). As with our review of rulings on motions to dismiss generally, we review
for abuse of discretion. See, e.g., My Café-CCC, Ltd. v. Lunchstop, Inc., 107 S.W.3d
860, 864 (Tex. App.—Dallas 2003, no pet.). However, to the extent that our review
involves contractual interpretation of a forum-selection clause—a legal matter—the
standard of review is de novo. See Southwest Intelecom, Inc. v. Hotel Networks
Corp., 997 S.W.2d 322, 324 (Tex. App.—Austin 1999, pet. denied).
Waived Challenge
          In point of error five, Phoenix asserts that the trial court erred in dismissing its
claims without including a “return jurisdiction clause” in the dismissal orders,
meaning that the trial court did not “take[] steps” in its dismissal order “to ensure that
[appellees] would not be allowed to use a forum selection clause as a shield to
litigation in one forum, and then be allowed to assert it as a jurisdictional defense in
the United Kingdom.” Phoenix waived this challenge by not asserting it below. See
Tex. R. App. P. 33.1(a). Furthermore, we note that both appellees stipulated below
that they would not contest jurisdiction if suit were brought in the U.K.
          We overrule point of error five.
 
 
The Validity of the Forum-Selection Clause



          In point of error one, Phoenix argues that the trial court erred in “misapplying
Texas law by granting [appellees’] motions to dismiss based on a forum selection
clause.” In point of error four, Phoenix argues that the trial court erred in dismissing
its claims because “the public policy rationale behind the enforcement of forum
selection clauses is not met in this case.”
A.      The Forum-Selection Clause and Other Pertinent Contractual Provisions
          The Distribution Agreement provided as follows:
30.1The parties hereby agree that this Agreement and the provisions
hereof shall be construed in accordance with English law and the
venue for resolution of any disputes arising out of this Agreement
shall be the United Kingdom.

          This provision contained both a choice-of-law provision and a forum-selection
clause. “This Agreement” referred to the Distribution Agreement between Phoenix’s
and CAI’s predecessors. The Distribution Agreement also attached a schedule
entitled “Schedule D–License Agreement,” which was a form contract that CAI’s
predecessor (and thus CAI) was to use in contracting with its customers. That
Schedule D contained a choice-of-law provision providing that Arizona law would
apply. The Distribution Agreement also contained a merger clause.
B.      The Law Relating to Forum-Selection Clauses
          A forum-selection clause is a creature of contract. See Southwest Intelecom,
Inc., 997 S.W.2d at 324-25 (applying contract-construction principles to interpret
forum-selection clause). “A forum selection clause can be a valuable tool because it
allows parties to select, up front, a specific jurisdiction for resolving future disputes,
which can reduce litigation risks and costs.” James T. Britton Jr., A Practitioner’s
Guide to Forum Selection Clauses in Texas, 1 Hou. Bus. & Tax L.J. 79, 80 (2001)
[hereinafter “Britton”]. 
          1.       The Two Tests for Determining Forum-Selection Clauses’
Enforceability

          Texas courts, like others across the country, had historically invalidated forum-selection clauses for violating public policy. In re AIU Ins. Co., 148 S.W.3d 109, 111
(Tex. 2004); see also M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9, 92 S. Ct.
1907, 1913 (1972); Britton at 81, 83-84. However, since the United States Supreme
Court’s landmark decision in M/S Bremen, and its later refining pronouncements in
Carnival Cruise Lines, Inc. v. Shute,


 Texas courts have begun enforcing forum-selection clauses. In re AIU Ins. Co., 148 S.W.3d at 111-12; Britton at 81, 89-98.          Until recently, the standards adopted by the United States Supreme Court and
by most Texas courts of appeals for determining the enforceability of forum-selection
clauses differed in important respects, however. See Britton at 98-103. Under the
test of M/S Bremen and Shute, forum-selection clauses “are prima facie valid and
should be enforced unless enforcement is shown by the resisting party to be
‘unreasonable’ under the circumstances.” M/S Bremen, 407 U.S. at 10, 92 S. Ct. at
1913; see Shute, 499 U.S. at 588, 111 S. Ct. at 1525 (citing M/S Bremen). The
clause’s opponent has a “heavy burden” to make a “strong showing” that the forum-selection clause should be set aside. M/S Bremen, 407 U.S. at 15, 92 S. Ct. at 1916;
see Shute, 499 U.S. at 592, 111 S. Ct. at 1526 (citing M/S Bremen). This burden
includes “clearly” to show that enforcement would be “unreasonable and unjust”; that
the clause was “invalid for such reasons as fraud or overreaching”; that “enforcement
would contravene a strong public policy of the forum in which suit is brought,
whether declared by statute or by judicial decision”; or that “the contractual forum
will be so gravely difficult and inconvenient” that the opponent “will for all practical
purposes be deprived of his day in court.” M/S Bremen, 407 U.S. at 15, 18, 92 S. Ct.
at 1916, 1917.
          In contrast, most Texas courts of appeals, including our own, had recognized
a two-part test to determine whether a forum-selection clause was valid and
enforceable: the clause was enforceable if (1) the parties contractually consented to
submit to the exclusive jurisdiction of another jurisdiction and (2) the other
jurisdiction generally recognized the validity of such provisions.


 These two aspects
had been described as threshold criteria. Southwest Intelecom, Inc., 997 S.W.2d at
324. Even if these two threshold criteria were met, however, a forum-selection clause
would not bind a Texas court if the interests of witnesses and public policy strongly
favored that the suit be maintained in a forum other than the one to which the parties
had agreed.


 
          The principal differences between the M/S Bremen and Shute test and the Texas
courts-of-appeals test are: (1) the M/S Bremen and Shute test views the forum-selection clause as prima facie valid and enforceable, while the Texas test requires
the clause’s proponent to establish, as a threshold matter, that the forum that the
parties selected recognizes the validity of the general type of forum-selection clause



and (2) the M/S Bremen and Shute test allows the opponent to defeat the forum-selection clause if, among other things, its enforcement would be unreasonable or
unjust, while the Texas test does not expressly recognize this enforcement exception. 
See Britton at 101-03; see also Holeman v. Nat’l Bus. Inst., Inc., 94 S.W.3d 91, 97-98 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (noting differences in two
tests without determining which applied).
          2.       The Current State of the Law in Texas
          The question remained, however, as to whether and to what extent Texas courts
would apply the M/S Bremen and Shute test. See Britton at 100-01; see also
Holeman, 94 S.W.3d at 97-98. This question arose because (1) at least three courts
of appeals (including our own) continued applying the Texas test after M/S Bremen,
but before Shute;


 (2) at least one Texas court of appeals continued to apply the Texas
test after Shute;


 and (3) three Texas courts of appeals (including our own), mainly
in situations in which federal law was either implicated or required, either adopted
the M/S Bremen and Shute test in its entirety, without discussion of the Texas test, or
combined the two tests.



          In 2004, however, the Texas Supreme Court appears to have answered this
question. The court cited with approval the M/S Bremen and Shute test and applied
many of the test’s factors, rather than relying on the test applied by the majority of
Texas courts of appeals through that time. See In re AIU Ins. Co., 148 S.W.3d at 113-14. In re AIU Insurance was not a maritime case. In In re AIU Insurance, AIU, a
New York corporation, provided pollution-liability coverage for, among other
entities, a Delaware corporation (“Dreyfus”) with its principal place of business in
Texas. Id. at 110-11. Dreyfus sued AIU in Texas for breach of contract, Insurance
Code violations, fraudulent inducement, and negligent misrepresentation and for a
declaratory judgment that certain environmental claims against it were covered by the
policy. Id. at 111. AIU moved to dismiss the suit because the policy contained a
forum-selection clause providing for suit in New York. Id. The trial court denied
AIU’s dismissal motion, the court of appeals denied writ of mandamus, and the Texas
Supreme Court granted writ. Id. at 110-11. In holding that the forum-selection clause
was enforceable, the supreme court rejected Dreyfus’s arguments that certain of the
factors established in M/S Bremen and Shute made the clause unenforceable. Id. at
111-16. The supreme court did not discuss the Texas test employed by most courts
of appeals up until that time, but neither did it expressly state that forum-selection
clauses were prima facie valid, as provided under the M/S Bremen and Shute test. See
id., passim. The supreme court did, however, squarely place the burden on Dreyfus,
the party opposing enforcement of the forum-selection clause, to carry its “heavy
burden” of showing that the forum-selection clause should not be enforced under the
M/S Bremen and Shute test. Id. at 113-14.
          Later the same year, the Texas Supreme Court issued a per curiam opinion
applying the In re AIU Insurance Co. holding. See In re Automated Collection
Techs., Inc., 156 S.W.3d 557 (Tex. 2004). In re Automated Collection Technologies
did not involve maritime law; rather, it involved a suit between a Texas corporate
plaintiff and a Pennsylvania corporate defendant for failure to pay for services
rendered pursuant to a written contract. Id. at 558. In explaining its earlier holding,
the In re Automated Collection Technologies court stated, “In In re AIU Ins. Co., we
held that enforcement of forum-selection clauses is mandatory unless the party
opposing enforcement ‘clearly show[s] that enforcement would be unreasonable and
unjust, or that the clause was invalid for such reasons as fraud or overreaching.’” Id.
at 559 (quoting In re AIU Ins. Co., 148 S.W.3d at 112). The In re Automated
Collection Technologies court then noted that the party opposing the clause’s
enforcement had not sustained “its burden” because it had “submitted no evidence”
showing that enforcement would be “unreasonable or unjust” and had not asserted
that the clause was invalid. Id. And in 2005, the Texas Supreme Court summarily
reaffirmed, in a case concerning a ruling on a special appearance, that “enforcement
of a forum-selection clause is mandatory absent a showing that ‘enforcement would
be unreasonable and unjust, or that the clause was invalid due to fraud or
overreaching.’” Michiana Easy Livin’ Country, Inc. v. Holten, No. 04-0016, 2005
WL 1252268, at *9 (Tex. May 27, 2005) (quoting In re Automated Techs., Inc.,156
S.W.3d at 559).
          We draw two conclusions from In re AIU Insurance Co., In re Automated
Collection Technologies, and Michiana Easy Livin’ Country, Inc. First, the Texas
Supreme Court has expressly adopted the M/S Bremen and Shute test, including who
has the burden to show that the forum-selection clause should not be enforced and of
what that burden consists. Second, the Texas Supreme Court has implicitly adopted
the presumption from M/S Bremen and Shute that forum-selection clauses are prima
facie valid. The implicit adoption of this presumption appears, as a matter of pure
logic, to supplant the threshold requirement, previously recognized by most Texas
courts of appeals, that the clause’s proponent establish that the forum that the parties
selected recognizes the validity of forum-selection provisions. 
          The parties litigated the forum-selection-clause issue below, and briefed it on
appeal, before the In re AIU Insurance Co., In re Automated Collection Technologies,
and Michiana Easy Livin’ Country, Inc. opinions issued. Nonetheless, the correct law
is that expressed in In re AIU Insurance Co., In re Automated Collection
Technologies, Michiana Easy Livin’ Country, Inc., M/S Bremen, and Shute. We will
thus analyze the issues under the M/S Bremen and Shute test, as the Texas Supreme
Court has instructed since the parties briefed the issues. We note, however, that our
disposition would be the same under either test discussed above, and some of our
discussion explains why this is so.
C.      The Enforceability of the Distribution Agreement’s Forum-Selection
Clause

          Under points of error one and four, Phoenix asserts six arguments in support
of its contention that the forum-selection clause was either invalid or unenforceable. 
First, Phoenix argues that appellees did not carry their threshold burden of showing
that Phoenix and CAI agreed that the U.K. would be the exclusive jurisdiction for
suit. Second, and subsumed within the first argument, is Phoenix’s assertion that
parol evidence, as well as evidence concerning post-contract actions by CAI’s
predecessor, Sterling, indicated that the forum-selection clause did not show the
parties’ intent to litigate exclusively in the U.K. Third, and alternatively to its first
two arguments, Phoenix argues that, if the forum-selection clause provided for
exclusive jurisdiction in the U.K., the clause was nonetheless invalid for having been
the result of mutual mistake. Fourth, Phoenix asserts that appellees did not carry their
alleged threshold burden of showing that the U.K.’s various jurisdictions would
enforce forum-selection clauses. Fifth, Phoenix argues that the forum-selection
clause was unenforceable for being vague. Sixth, Phoenix argues that the forum-selection clause was unenforceable for violating Texas public policy. We address
Phoenix’s first two arguments together and the remainder separately.
          1.       Whether the Parties Chose the U.K. as the Exclusive Forum
          In construing a forum-selection clause, “our primary goal is to give effect to
the written expression of the parties’ agreement.” See Southwest Intelecom, 997
S.W.2d at 324. “We must read the provision in its entirety, striving to give meaning
to every sentence, clause, and word to avoid rendering any portion inoperative.” Id.
at 324-25. “Parol evidence of the parties’ intentions is not admissible to aid our
interpretation, but we must read the jurisdiction clause in light of relevant
surrounding circumstances.” Id. at 325. If, after the application of contract-construction rules, a contract such as a forum-selection agreement is susceptible of
only one reasonable meaning, the contract is unambiguous. See Universal C.I.T.
Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex. 1951). When a contract is
unambiguous, parol evidence cannot be considered to create an ambiguity or to give
the contract a meaning different from that of its plain language. Id. In contrast, if,
after the application of contract-construction rules, a contract remains susceptible to
more than one reasonable interpretation, it is ambiguous. Id.; see Southwest
Intelecom, 997 S.W.2d at 325 (applying same rule to forum-selection clause). Only
if a contractual provision is ambiguous may parol evidence be considered to
determine which meaning is proper. R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,
596 S.W.2d 517, 519 (Tex. 1980). The purpose of a merger clause, like that to which
the parties here agreed, is to invoke the parol evidence rule when appropriate. 
Burleson State Bank v. Plunkett, 27 S.W.3d 605, 615 (Tex. App.—Waco 2000, pet.
denied).
          Here, the forum-selection clause could not more plainly require that any
disputes arising out of


 the Distribution Agreement be litigated in the U.K. The use
of “shall” generally indicates a mandatory requirement. See, e.g., Albertson’s, Inc.
v. Sinclair, 984 S.W.2d 958, 961 (Tex. 1999); Milk ‘N’ More, Inc. v. Beavert, 963
F.2d 1342, 1346 (10th Cir. 1992) (applying same rule of construction to forum-selection clause). Additionally, the forum-selection clause provides that “the venue”
for suit will be in the U.K., not “a” venue for suit. Use of the definite article indicates
that the parties intended for the U.K. to be the exclusive venue. 
          This is not a clause like those considered in Mabon Ltd. v. Afri-Carib
Enterprises, Inc. or Southwest Intelecom, Inc., on which Phoenix relies. See Mabon
Ltd., 29 S.W.3d 291 (Tex. App.—Houston [14th Dist.] 2000, no pet.); Southwest
Intelecom, Inc., 997 S.W.2d at 323, 325-26. In Southwest Intelecom, Inc., the
contract provided only that “[t]he parties stipulate to jurisdiction and venue in
Ramsey County, Minnesota, as if this Agreement were executed in Minnesota.” Id.,
997 S.W.2d at 323, 325-26. Because that language “neither prohibit[ed] litigation in
jurisdictions other than” the stated county “nor provide[d] that Minnesota courts ha[d]
exclusive jurisdiction over all claims arising out of the contract,” Ramsey County was
not the exclusive venue for suit. Id. at 325. In Mabon, the forum-selection clause
provided that “the Federal District of Nigeria shall have venue.” Id., 29 S.W.3d at
297. The Mabon court correctly concluded that that language provided only that
Nigeria would be a suitable venue if the parties chose to litigate there, not that the
parties had to bring suit there. Id. In contrast, courts have had little trouble
interpreting provisions like the one here—which provide that disputes be litigated in
a particular place, rather than that a particular place be the proper venue—to
designate an exclusive, and thus valid, forum.


 In short, the forum-selection clause
here unambiguously meant what it said: the parties had to bring suit concerning any
dispute arising out of the Distribution Agreement in the U.K. Nothing within the
clause itself made the clause ambiguous. 
          Phoenix argues that two matters outside the forum-selection clause’s plain
language render the clause ambiguous, thus allowing for consideration of Phoenix’s
parol evidence of the contracting parties’ intent.


 That parol evidence consisted of
the affidavits of Trevor Smyth and Samuel Coffee, who signed the Distribution
Agreement on behalf of Phoenix’s and CAI’s predecessors. Coffee averred that
Phoenix USA and Phoenix knew prior to executing the Distribution
Agreement that Phoenix would be procuring U.K. and European-based
subdistributors of the product. Therefore, Phoenix USA and Phoenix
drafted the Forum Selection Clause to account for the possibility of
litigation between Phoenix and the U.K. and European-based product
subdistributors and resellers. Accordingly, the Forum Selection Clause
sets out Phoenix USA and Phoenix’s intention that future disputes
between Phoenix and the imminent U.K. and European-based product
subdistributors and resellers would have the [U.K.] as a forum for those
potential disputes with Phoenix. . . . The Forum Selection Clause was
not negotiated or drafted to express Phoenix USA’s intention to have
disputes heard by the Courts of the [U.K.]. Phoenix USA expected that
disputes between Phoenix USA and Phoenix would be resolved by the
Courts of Arizona.

Smyth averred that
The Distribution Agreement’s clause 30.1 was not negotiated or drafted
to express [either party’s] intent to have disputes heard by the Courts of
the United Kingdom. [Each party] expected that disputes between
[CAI’s predecessor] and Phoenix would be resolved by the courts of
Arizona. [The parties] drafted and negotiated the clause 30.1 to set out
[their] intention that potential future disputes between Phoenix and
future U.K. and Europe-based product sub-distributors and resellers
under the Distribution Agreement would have the United Kingdom as
a forum for those potential disputes. In other words, Phoenix’s disputes
with its European-bases [sic] sub-distributors would be in the United
Kingdom.
Of course, the text quoted from these affidavits contradicted the forum-selection
clause’s plain language, which provided that “the venue for resolution of any disputes
arising out of this Agreement” (as opposed to only some disputes between certain
entities arising out of the agreement) “shall be the United Kingdom.” (Emphasis
added.) Accordingly, we may consider the affidavits only if the forum-selection
clause was rendered ambiguous by one of the two external matters on which Phoenix
relies. 
          The first external matter on which Phoenix relies is the Distribution
Agreement’s Schedule D, which contained a choice-of-law provision requiring the
application of Arizona law to CAI’s contracts with its customers. Phoenix argues that
Schedule D’s choice of Arizona law rendered the forum-selection clause’s
designation of the U.K. ambiguous, so that Smyth’s and Coffee’s affidavits could be
considered. We disagree. Schedule D’s cited language is a choice-of-law provision,
not a choice-of-forum provision. Additionally, the fact that CAI’s licensing contracts
with its customers required the application of Arizona law had no effect on the choice
of law or forum to which CAI and Phoenix had agreed to be bound for “any disputes
arising out of [their Distribution] Agreement.” The two types of agreements’ being
independent covenants, their choice-of-law and choice-of-forum provisions had no
effect on one another.


 
          The second external matter on which Phoenix relies is the fact that CAI’s
immediate predecessor, Sterling, negotiated to replace the Distribution Agreement
with one that contained a Texas choice-of-law provision. However, this circumstance
did not render the forum-selection clause ambiguous because (1) Sterling and
Phoenix never consummated that agreement; (2) the proposed amendment concerned
only a change in the choice of law, not in the choice of forum; and (3) if anything,
Sterling’s attempt to change the agreement to apply Texas law implicitly recognized
that Texas law (and, under Phoenix’s logic, a Texas forum) did not apply under the
Distribution Agreement’s current terms.
          Because the forum-selection clause was not ambiguous for the reasons that
Phoenix urges, we hold that Phoenix’s parol-evidence affidavits could not be
considered to render the clause ambiguous or to vary its plain terms—which we have
already held unambiguously required that disputes arising out of the Distribution
Agreement be litigated in the U.K. See Daniel, 243 S.W.2d at 157.
          2.       Whether the Forum-Selection Clause Was the Result of Mutual
Mistake

          Alternatively, Phoenix argues that the forum-selection clause was invalid for
having been the result of the contracting parties’ mutual mistake.
          “Pursuant to the doctrine of mutual mistake, when parties to an agreement have
contracted under a misconception or ignorance of a material fact, the agreement will
be avoided.” Williams v. Glash, 789 S.W.2d 261, 264 (Tex. 1990). “The question
of mutual mistake is determined not by self-serving subjective statements of the
parties’ intent, . . . but rather solely by objective circumstances surrounding
execution” of the contract. Id. “The parol evidence rule does not bar extrinsic proof
of mutual mistake.” Id. The burden was on Phoenix to prove mutual mistake. See
id. 
          Phoenix again relies on the above-quoted portions of the affidavits of Coffee
and Smyth, arguing that, “no matter what the [forum-selection clause] states, its poor
drafting was the result of mutual mistake because no one intended for disputes
between Phoenix and [CAI] to be resolved in the [U.K.].” However, their affidavits
made merely “self-serving subjective statements of the parties’ intent,” rather than
providing the “objective circumstances surrounding execution” of the Distribution
Agreement that would be a proper basis for mutual mistake. See id. We hold that the
trial court did not err in implicitly rejecting mutual mistake as a basis for the forum-selection clause’s invalidity.
          3.       Whether the Selected Forum Recognized the Validity of Forum-Selection Clauses Generally

          Phoenix further asserts that the trial court erred in dismissing its claims because
appellees did not demonstrate that the three legal systems comprising the U.K. would
enforce forum-selection clauses.



          Phoenix’s arguments assume that, as a threshold matter, appellees had to show
that the U.K. would recognize the validity of forum-selection clauses. See, e.g., My
Café-CCC, Ltd., 107 S.W.3d at 864. The M/S Bremen and Shute test that our state
supreme court currently employs does not have this threshold requirement, instead
providing that forum-selection clauses are prima facie valid and will be enforced
unless the opponent makes a strong showing that the forum-selection clause should
be set aside. See In re AIU Ins. Co., 148 S.W.3d at 113-14 (citing M/S Bremen, 407
U.S. at 15, 92 S. Ct. at 1916); In re Automated Collection Techs., Inc., 156 S.W.3d
at 559. Therefore, under current Texas Supreme Court precedent, appellees did not
need to establish that any jurisdiction within the U.K. recognized the validity of
forum-selection clauses generally.



          4.       Whether the Forum-Selection Clause Was Unenforceable for Being
Vague

          Phoenix also argues that the forum-selection clause was unenforceable because
it was “vague” in two respects: the clause (1) was too narrow in scope and (2)
allowed for suit in the U.K., which is composed of four principal jurisdictions and
which employs three legal systems. 
          Phoenix first argues that the forum-selection clause was vague because the
parties allegedly made only limited disputes subject to the clause, while the law
allegedly requires that the parties agree to submit all disputes in the chosen forum. 
Phoenix cites no authority requiring the breadth that it proposes, and we have found
none. Just as parties may contract to send what disputes they wish to arbitration, so
may parties contract for particular disputes to be resolved in a chosen forum. 
Moreover, we reject Phoenix’s further assertion that the forum-selection clause here
did not require that all disputes arising out of the Distribution Agreement be litigated
in the U.K. simply because the clause used “any” instead of “all.” See Bd. of
Adjustment v. C.C. Underwood, 332 S.W.2d 583, 586 (Tex. Civ. App.—San Antonio
1960, writ ref’d n.r.e.) (noting that “any” means “all”).
          Second, Phoenix argues that the forum-selection clause was vague because (1)
it provided for venue in “the United Kingdom,” a nation consisting of Great Britain
(which itself consists of England, Wales, and Scotland) and Northern Ireland and
which employs three legal systems for civil disputes,


 and (2) the clause did not
specify a particular court or court system within one of these four principal
jurisdictions within the U.K., given that “there are certainly courts within the U.K.
that cannot properly exercise jurisdiction” over Phoenix’s claims. Phoenix admits
that “no Texas case specifically addresses this requirement,” and we have found none
expressly requiring that the parties limit their choice of forum to one political
subdivision within a single larger political unit or that they specify a particular court
within the selected jurisdiction. In fact, we have found opinions in which courts
have, without discussing the issue that Phoenix raises, either enforced forum-selection clauses when a larger political unit (such as an entire country) was
indicated


 or when the parties did not specify a particular court or court system
within a chosen forum.


 Simply put, “exclusive” does not necessarily have to mean
“single.”



          5.       Public Policy
          Phoenix further contends that the trial court erred in enforcing the forum-selection clause because, under the facts of this case, “its enforcement frustrates the
legal justification and rationale behind Texas’s forum selection clause law.” Phoenix
makes three arguments in support.
 
          First, Phoenix argues that neither Neon nor CAI “ever bargained for . . .
[making] the U.K. the exclusive forum for any disputes with Phoenix.” With respect
to CAI, we have already rejected above the arguments that Phoenix makes in support. 
With respect to Neon, we discuss later in this opinion whether it may enforce the
forum-selection clause, to which it was not a signatory, against Phoenix. 
          Second, Phoenix appears to argue that, because CAI was a “twice-removed
assignee” of and did not itself enter into the Distribution Agreement, public policy
supports not enforcing the Distribution Agreement’s forum-selection clause. 
However, there was evidence that CAI was the successor to Phoenix Network
Technologies, Inc. and that CAI had obtained Phoenix Network Technologies, Inc.’s
rights and obligations under the Distribution Agreement. With certain exceptions that
are inapplicable here, Texas law generally allows parties to assign their rights and
duties under contracts. See, e.g., Crim Truck & Tractor Co. v. Navistar Int’l Transp.
Corp., 823 S.W.2d 591, 596 (Tex. 1992). We decline to hold that Texas public policy
prevents an assignee, to whom the rights and obligations of a contract containing a
forum-selection clause have been assigned, from obtaining enforcement of the clause
simply because it was not an original contracting party.
          Third, Phoenix notes that, in most cases in which a court has enforced a forum-selection clause, the party seeking enforcement was not a Texas resident. Phoenix
thus argues that, because Neon and CAI operated in Texas and sought to enforce a
forum-selection clause selecting the U.K., the policy reasons behind forum-selection-clause enforcement were not met. We disagree. The Texas Supreme Court has
recently enforced a forum-selection clause even when the defendant seeking
enforcement was a Texas resident that had been sued in the county of its principal
place of business. See In re Automated Collection Techs., Inc., 156 S.W.3d at 558,
560. Moreover, the fact that the defendant is a Texas resident does not trump the
contractual agreement to litigate in a particular place or necessarily make that
agreement violative of public policy. This result obtains because of the policy
supporting the enforcement of forum-selection clauses. As the United States
Supreme Court has explained, “The expansion of American business will hardly be
encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that
all disputes must be resolved under our laws and in our courts.” M/S Bremen, 407
U.S. at 9, 92 S. Ct. at 1912. The Court continued, “There are compelling reasons why
a freely negotiated private international agreement, unaffected by fraud, undue
influence, or overweening bargaining power, . . . should be given full effect. . . . The
elimination of all such uncertainties by agreeing in advance on a forum acceptable to
both parties is an indispensable element in international trade, commerce, and
contracting.” Id., 407 U.S. at 12-13, 92 S. Ct. at 1914-15.
          Phoenix, which had a “heavy burden” to make a “strong showing” that this
forum-selection clause should be set aside, presents no further argument in support
of this point of error. See M/S Bremen, 407 U.S. at 15, 92 S. Ct. at 1916; In re AIU
Ins. Co., 148 S.W.3d at 111. Neither does Phoenix explain how enforcement would
be “unreasonable and unjust”; how the clause is “invalid for such reasons as fraud or
overreaching”; or how litigating in the U.K. “will be so gravely difficult and
inconvenient” that Phoenix “will . . . be deprived of [its] day in court.” See M/S
Bremen, 407 U.S. at 15, 18, 92 S. Ct. at 1916, 1917. We hold that Phoenix has not
carried its heavy burden. For similar reasons, we note that Phoenix would not have
carried its burden under the Texas test, either. See, e.g., My Café-CCC, Ltd., 107
S.W.3d at 865 (indicating that forum-selection clause will not bind court if interests
of witnesses and public policy strongly favor that suit be maintained in forum other
than one to which parties agreed).
          6.       Conclusion
          Concluding that the forum-selection clause, which unambiguously designated
the U.K. as the chosen forum, was neither invalid nor unenforceable for the reasons
that Phoenix asserts, we overrule points of error one and four.
Exclusion of Evidence
          In point of error three, Phoenix argues that the trial court abused its discretion
in excluding evidence that allegedly showed that “Texas is not only the appropriate,
but also the convenient forum for this dispute.” Specifically, Phoenix asserts that the
documents that the court excluded—obtained from Neon’s document
production—revealed 17 individual “potential local Texas and U.S. witnesses
knowledgeable of this case” and two “related [corporate] entities (grouped according
to apparent company affiliation).” However, Phoenix’s burden was to show how
litigating in the U.K. “w[ould] be so gravely difficult and inconvenient” that Phoenix
“w[ould] . . . be deprived of [its] day in court.” See M/S Bremen, 407 U.S. at 15, 18,
92 S. Ct. at 1916, 1917; accord In re AIU Ins. Co., 148 S.W.3d at 113. Appellees had
already presented evidence that “substantially all witnesses with knowledge of facts
relevant to the Lawsuit reside in the United Kingdom”; that “[a]ll of the original sales
documents relevant to Phoenix’s allegations against Neon are located in the U.K.”;
and that “Phoenix conducted its business operations, if any, in the United Kingdom,
where its headquarters are located.” Additionally, Phoenix points to no evidence that
it offered showing that these potential witnesses would have to travel to the U.K. or
that their travel there would cause undue hardship or expense. Given the evidence
before the trial court, and the heavy burden that the law placed on Phoenix to
overcome the contractual choice of forum, we hold that, assuming without deciding
that the trial court erred in excluding this evidence, that error would be harmless. See
Tex. R. App. P. 44.1(a); see also Holeman, 94 S.W.3d at 102 (“[A]lthough Holeman
contended in the court below that numerous potential witnesses reside in the greater
Houston area, he presented no evidence that all of these witnesses would be required
to travel to Georgia, or that such travel would cause undue hardship or expense.”). 
          We overrule point of error three.
Enforcement by Non-Signatory Neon
          In point of error two, Phoenix argues that the trial court erred in implicitly
concluding that Neon, which did not sign the Distribution Agreement, could enforce
the agreement’s forum-selection clause against Phoenix.
A.      Grounds in Neon’s Motion to Dismiss
          Neon relied below on three theories to support its position that it could enforce
the forum-selection clause. One theory on which Neon relied exists in the forum-selection-clause context: “a valid forum selection clause governs all transaction
participants, regardless of whether the participants were actual signatories to the
contract.” See Accelerated Christian Educ., Inc., 925 S.W.2d at 75. Neon borrowed
the other two theories, based on estoppel, from arbitration law: under “direct benefits
estoppel,” a non-signatory may enforce an arbitration agreement when the signatory
plaintiff sues it seeking to derive a direct benefit from the contract containing the
arbitration provision;


 estoppel also applies when a signatory plaintiff sues both
signatory and non-signatory defendants based on substantially interdependent and
concerted misconduct by all defendants.


 The trial court granted Neon’s motion to
dismiss without stating the basis of its ruling.
B.      Applicability of Arbitration Law
          We need address only the last theory on which Neon relied: that a non-signatory defendant may enforce an arbitration agreement against a signatory plaintiff
when the plaintiff has sued signatory and non-signatory defendants based on
substantially interdependent and concerted misconduct by all defendants. See
Mohamed v. Auto Nation USA Corp., 89 S.W.3d 830, 837 (Tex. App.—Houston [1st
Dist.] 2002, orig. proceeding, no pet.) (combined appeal and mandamus proceeding). 
Phoenix raises only one appellate challenge to the trial court’s implicit determination
that this estoppel theory allowed Neon to enforce the forum-selection clause: that
arbitration authority, and thus the estoppel ground on which Neon relied under that
authority, does not apply. Phoenix does not assert a contingent appellate challenge
that, even if arbitration authority applies by analogy, Phoenix did not allege facts
constituting substantially interdependent and concerted misconduct between CAI and
Neon.


 Accordingly, we limit our discussion to whether arbitration authority, and
thus this estoppel theory, apply by analogy to forum-selection clauses, without
reaching the merits of that estoppel theory. See Walling v. Metcalfe, 863 S.W.2d 56,
58 (Tex. 1993) (“We have held repeatedly that the courts of appeals may not reverse
the judgment of a trial court for a reason not raised in a point of error.”).
          The United States Supreme Court has indicated that “[a]n agreement to
arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection
clause that posits not only the situs of suit but also the procedure to be used in
resolving the dispute.” Scherk v. Alberto-Culver Co., 417 U.S. 506, 519, 94 S. Ct.
2449, 2457 (1974). Likewise, the Texas Supreme Court has described an arbitration
agreement as “another type of forum-selection clause”; has stated that it “see[s] no
meaningful distinction between this type of forum-selection clause and arbitration
clauses”; and has concluded that the law concerning waiver, and whether an adequate
remedy by appeal exists applicable to arbitration agreements, also applies, by
analogy, to the same matters in the context of forum-selection clauses. See In re AIU
Ins., 148 S.W.3d at 116, 121; see also In re Automated Techs., Inc., 156 S.W.3d at
559 (noting that In re AIU Insurance court, in considering whether right to rely on
forum-selection clause had been waived,“relied on cases concerning waiver in the
arbitration context, which we found to be analogous.”). The Fifth Circuit Court of
Appeals, likewise, has concluded that law allowing an arbitration clause to be
invalidated because of fraud or overreaching applies by analogy to forum-selection
clauses because arbitration clauses are a sub-set of forum-selection clauses in general. 
Haynsworth v. The Corp., 121 F.3d 956, 963 (5th Cir. 1997).
          We see no reason that these courts would not also apply arbitration law’s two
equitable-estoppel theories for enforcement by a non-signatory to forum-selection
clauses. Indeed, the federal District Court for the Northern District of Texas has
concluded, in an unpublished opinion, that arbitration law’s two equitable-estoppel
theories for enforcement by a non-signatory apply to forum-selection clauses because
the two clauses are similar—although, there, admittedly, the court also relied on the
fact that the parties agreed that arbitration law was analogous. See Vartec Telecom,
Inc. v. BCE, Inc., No. 3:02-CV-2585-M, 2003 WL 22364302, at *2 (N.D. Tex. Oct.
9, 2003) (not designated for publication).
          Phoenix relies on dictum in Accelerated Christian Education, Inc. for the
contrary position. See 925 S.W.2d at 75 n.12. In Accelerated Christian Education,
Inc., the Dallas Court of Appeals—rejecting, in dictum, reliance on arbitration
authority—considered whether the non-signatory defendant in that case could enforce
a forum-selection clause against the signatory plaintiff. Id. at 75 & 75 n.12. The
Accelerated Christian Education, Inc. court rejected the argument of the plaintiff,
who was opposing the forum-selection clause’s enforcement, that two arbitration
cases in which courts had indicated that a non-signatory party’s claims could not be
compelled to arbitration was analogous. Id. at 75 n.12 (citing Prudential-Bache Sec.,
Inc. v. Garza, 848 S.W.2d 803, 807 (Tex. App.—Corpus Christi 1993, no writ) and
Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Longoria, 783 S.W.2d 229, 231 (Tex.
App.—Corpus Christi 1989, no writ)). Although arbitration clauses are a sub-category of forum-selection clauses generally, the Accelerated Christian Education,
Inc. court reasoned that “an arbitration clause, unlike a forum-selection clause,
completely deprives the parties of any judicial forum for their complaints. Because
a forum selection clause only specifies the judicial forum in which the parties may
litigate their complaints, we do not find Garza and Longoria controlling.” Id.
(emphasis in original). That is, Accelerated Christian Education, Inc. appears to
imply that determining whether a non-signatory may enforce an arbitration agreement
may, under some circumstances, be a more narrow determination than it would be for
forum-selection clauses.


 See id.
          We have the opposite situation and use of arbitration authority in this case,
however. Here, a party defendant and proponent of the forum-selection clause’s
enforcement relies on arbitration authority in which the courts indicated that equity
does allow non-signatories to enforce arbitration agreements under certain
circumstances. If the issue of non-signatory enforcement of arbitration
agreements—which the Accelerated Christian Education, Inc. court implied might
be the more restrictive determination—may be decided under equitable principles,
then the same issue may also be decided under equitable principles in the context of
forum-selection clauses. Moreover, as stated above, the Texas Supreme Court has
stated that it sees no meaningful distinction between the two types of clauses. See 
In re AIU Ins., 148 S.W.3d at 116, 121.
          We hold that the arbitration-law equitable-estoppel theory that is the subject
of this discussion applies to forum-selection clauses. Because Phoenix has not
assigned error to the merits of whether it alleged that Neon and CAI committed the
substantially interdependent and concerted misconduct that this theory requires, we
overrule issue two.
Conclusion
          We affirm the judgment of the trial court.
                                         

 
Tim Taft
                                                             Justice

Panel consists of Justices Taft, Alcala, and Higley.