MY CAFÉ–CCC, LTD. & My Café– McKesson, Ltd., Appellants,

v.

LUNCHSTOP, INC., Appellee.

No. 05–02–01277–CV.

Court of Appeals of Texas, Dallas.

June 18, 2003.

Thomas B. Alleman, Winstead Sechrest & Minick PC, Dallas, for appellants.

Shelby J. Bush, Piper Rudnich LLP, Dallas, Susan F. Shapiro, Law Office of Susan F. Shapiro & Associates, Morgan Hill, CA, for appellee.

Before Justices FRANCIS, FARRIS,[1] and ROSENBERG.[2]

## OPINION

Opinion by Justice ROSENBERG (Assigned).

In a single issue, My Café–CCC, Ltd. and My Café–McKesson, Ltd. (collectively, My Café) contend that the trial court erred in granting LunchStop, Inc.'s motion to dismiss based on forum selection clauses in the parties' franchise agreements. For the reasons below, we reject My Café's arguments and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

My Café executed four franchise agreements with LunchStop: three separate franchise agreements and one assumption agreement. Before entering each agreement, My Café received a "Franchise Offering Circular" that stated in all capital letters:

> THE FRANCHISE AGREEMENT PERMITS THE FRANCHISEE TO SUE THE FRANCHISOR [sic] ONLY IN SAN FRANCISCO, CALIFORNIA.[3] OUT OF STATE LITIGATION MAY FORCE YOU TO ACCEPT A LESS FAVORABLE SETTLEMENT FOR DISPUTES. IT MAY ALSO COST MORE TO SUE IN CAL-

---

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

3. Another offering circular in the record specifies Santa Clara, California.

IFORNIA THAN IN YOUR HOME STATE.

THE FRANCHISE AGREEMENT STATES THAT CALIFORNIA LAW GOVERNS THE AGREEMENT, AND THIS LAW MAY NOT PROVIDE THE SAME PROTECTIONS AND BENE-FITS AS LOCAL LAW. YOU MAY WANT TO COMPARE THESE LAWS.

Each of the franchise agreements provided the following statement concerning the application of state law and venue for disputes in the same typeface as the entire agreement:

This Agreement shall become valid when executed and accepted by FRAN-CHISOR in San Francisco, California [4]; it shall be deemed made and entered into in the State of California. Except to the extent governed by the United States Trademark Act of 1946 ... or other federal law, this Agreement, the Franchise and the relationship between FRANCHISOR and FRANCHISEE shall be governed and construed in accordance with the laws of the State of California. Any dispute arising under or in connection with this Agreement and any claim affecting its validity, construction, effect, performance or termination shall be resolved exclusively by the federal or state courts located in San Francisco, California, to which the parties irrevocably submit. . . .

After My Café alleged a breach of the agreements, it filed suit in Dallas County against LunchStop, seeking to recover damages based on fraudulent inducement and breach of contract. My Café alleged that venue was proper in Dallas County because LunchStop committed a tort in Texas and also because the forum selection clauses in the franchise agreements did not comply with section 35.53(b) of the

Texas Business and Commerce Code. My Café contended that it was exercising its right under the code to void the forum selection clauses in the agreements. LunchStop filed an answer and a motion to dismiss, stating the court did not have jurisdiction because of the valid forum selection clauses in the offering circulars. On May 17, 2002, the trial court granted the motion to dismiss "because of a contractual forum selection requirement to litigate in California." My Café filed a motion for new trial that was denied on July 31, 2002. On August 1, the trial court set aside the dismissal. Then, on August 30, the trial court again denied the motion for new trial and dismissed the suit. My Café appeals.

## JURISDICTION

■ We first address LunchStop's assertion that this Court does not have jurisdiction because My Café filed an amended notice of appeal on October 23, 2002, identifying the trial court's August 30 order as the subject of this appeal. LunchStop argues that My Café's notice of appeal, filed pursuant to rule of appellate procedure 26.1, was due thirty days after the August 30 judgment. Even with an applicable fifteen-day extension pursuant to rule 26.3, LunchStop asserts the notice of appeal was filed fifty-three days after August 30, thus depriving this Court of jurisdiction.

The record reflects that My Café timely filed a motion for new trial and then, on August 14, 2002, filed its notice of appeal, within ninety days following the May 17 judgment. See TEX.R.APP. P. 26.1(a)(1) (providing that notice of appeal must be filed within ninety days after judgment signed when motion for new trial filed). Although the trial court denied the motion for new trial, it vacated the judgment on August 1, 2002. Rule 27.2 provides that

---

4. Morgan Hill, California, was specified in two agreements.

"[t]he appellate court may treat actions taken before an appealable order is signed as relating to an appeal of that order and give them effect as if they had been taken after the order was signed." Tex.R.App. P. 27.2. Thus, the prematurely filed August 14, 2002 notice of appeal became effective after the trial court signed the August 30 judgment. That My Café amended its notice of appeal to reflect the August 30 order at this Court's request does not change the premature nature of the originally-filed notice. We conclude that this Court has jurisdiction over this appeal.

## WAIVER

■ As part of its single issue, My Café complains that the trial court erred in dismissing its action because LunchStop waived its right to dismissal when LunchStop entered a general appearance, rather than a special appearance. A party may make a special appearance to object to the trial court's jurisdiction over the defendant's person or property because such person or property is not amenable to process in this State. *See* Tex.R. Civ. P. 120a. Here, LunchStop moved to dismiss the case based on forum selection clauses-not that it was not amenable to process. Because a special appearance does not address forum selection clauses, LunchStop could not waive its complaint by failing to enter a special appearance. *See Accelerated Christian Educ., Inc. v. Oracle Corp.,* 925 S.W.2d 66, 70 (Tex.App.-Dallas 1996, no writ).

## FORUM SELECTION CLAUSE

In the remainder of its issue, My Café claims that the trial court erred in dismissing its suit because the forum selection clauses were unenforceable, thus making suit in Texas proper. My Café argues that the forum selection clauses did not comply with section 35.53 of the Texas Business and Commerce Code, were procured through fraud, and were not applicable to causes of action for fraudulent inducement. LunchStop responds that section 35.53 does not apply to the franchise agreement because it had complied with section 41.104(b)(8) of the business and commerce code and the forum selection clause was disclosed in the offering circular.

■ A trial court's decision regarding the validity and enforcement of forum selection clauses is reviewed under an abuse of discretion standard. *Holeman v. Nat'l Bus. Inst., Inc.,* 94 S.W.3d 91, 95 (Tex. App.-Houston [14th Dist.] 2002, pet. denied); *Barnett v. Network Solutions, Inc.,* 38 S.W.3d 200, 203 (Tex.App.-Eastland 2001, pet. denied). An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence. *See Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Holley v. Holley,* 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied). The trial court abuses its discretion if it acts without reference to any guiding principles or acts arbitrarily or unreasonably. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). A failure by a trial court to analyze or apply the law correctly is an abuse of discretion. *McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex.1995).

■ Forum selection clauses are enforceable in Texas, provided that (1) the parties have contractually consented to submit to the exclusive jurisdiction of another state, and (2) the other state recognizes the validity of such provisions. *Southwest Intelecom, Inc. v. Hotel Networks Corp.,* 997 S.W.2d 322, 324 (Tex. App.-Austin 1999, pet. denied); *Accelerated,* 925 S.W.2d at 70. Texas courts are not

bound by the parties' selection of a forum with regard to any cause of action if the interests of the public and potential witnesses strongly favor jurisdiction in a forum other than the forum the parties selected. *Accelerated*, 925 S.W.2d at 70.

■ My Café does not argue that California would not enforce a forum selection clause or that there is a public policy interest in selecting a Texas forum. My Café first argues that there is no enforceable forum selection clause because My Café did not contractually consent to submit to the exclusive jurisdiction of another state. My Café relies on section 35.53 of the business and commerce code, which allows a party to declare a forum selection clause void. *See* Tex. Bus. & Com.Code Ann. § 35.53(b) (Vernon 2002). This section applies to a contract only if:

(1) the contract is for the sale, lease, exchange, or other disposition for value of goods for the price, rental, or other consideration of $50,000 or less;

(2) any element of the execution of the contract occurred in this state and a party to the contract is:

(A) an individual resident of this state; or

(B) an association or corporation created under the laws of this state or having its principal place of business in this state; and

(3) section 1.105 of this code does not apply to the contract.

*Id.* § 35.53(a). The statute provides that if those conditions apply and the contract contains a forum selection provision, then:

*the provisions must be set out conspicuously in print, type, or other form of writing that is bold-faced, capitalized, underlined, or otherwise set out in such a manner that a reasonable person against whom the provision may operate would notice.* If the provision is not set out as provided by this subsection, the provision is voidable by a party against whom it is sought to be enforced.

*Id.* § 35.53(b) (emphasis added).

■ The franchise contracts were for less than $50,000, and My Café is a limited partnership having its principal place of business in Texas. However, these facts alone are not sufficient to invoke section 35.53. The party seeking to avoid the forum selection clause must show that section 1.105 does not apply to the contract. Section 1.105 provides in pertinent part:

[W]hen a transaction bears a reasonable relation to this state and also to another state ... the parties may agree that the law of either this state or of such state ... shall govern their rights and duties.

*Id.* § 1.105(a) (Vernon Supp.2003). This section confers upon parties to a multistate transaction the right to choose their own law. *Id.* § 1.105 cmt. 1 (Vernon 1994). The test is a reasonable relation of the chosen state to the contract. *Id.* § 1.105 & cmt. 1. The state in which a company has its principal place of business has a reasonable relationship to the parties and the transaction. *Salazar v. Coastal Corp.*, 928 S.W.2d 162, 167 (Tex.App.-Houston [14th Dist.] 1996, no writ); *see Mostek Corp. v. Chemetron Corp.*, 642 S.W.2d 20, 23–24 (Tex.App.-Dallas 1982, writ dism'd by agr.). LunchStop's corporate headquarters are in Morgan Hill, California. Because the choice of law and forum had a reasonable relation to the State of California, section 1.105 is applicable. Therefore, section 35.53(b) does not apply to this transaction. My Café could not declare the forum selection clauses void. Accordingly, My Café contractually consented to the forum selection clauses.

■ My Café then argues that the forum selection clauses are unenforceable because they were procured by fraud. My

Café asserts that the clauses in the agreements were different from the disclosure in the offering circular. A forum selection clause may be set aside if it is induced by fraud. *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). Nevertheless, in defending the motion to dismiss, it was incumbent upon My Café to present evidence with respect to each of the elements of fraud in the inducement of the execution of the forum selection clause. The elements of fraud and fraudulent inducement, applicable here, are: (1) a material misrepresentation, (2) which was false, and (3) which was either known to be false when made or was asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990). My Café did not present evidence for each of these elements. In fact, My Café does not even contend that the representations in the offering circular as to the forum were false. Rather, it asserts that the representations were not identical to the forum selection clauses in the agreements. However, the offering circular My Café received stated that a franchisee could sue LunchStop only in San Francisco, California. One agreement stated that claims were to be resolved exclusively in San Francisco, California, and two agreements specified Morgan Hill, California. My Café does not explain what the material misrepresentation was or how it was relied upon to secure the forum selection clauses. My Café has not met its burden of showing fraud in the inducement.

 Next, My Café argues that the forum selection clauses do not apply because the agreements were fraudulently induced. My Café asserts that LunchStop fraudulently misrepresented the profitability of the franchise. Specifically, My Café

alleges that LunchStop overstated the number of tenants for the customer base, inducing My Café to execute the agreements.

 The application of a forum selection clause to an asserted cause of action depends on the causes of action asserted and the terms of the clause. *See Southwest Intelecom*, 997 S.W.2d at 324–25 (interpreting language of jurisdiction clause in agreement to determine whether parties in fact agreed to exclusive jurisdiction of another state). Interpretation of a writing is a legal matter that we review *de novo*. *Id.* at 324. In interpreting the jurisdiction clause in the agreements, our primary goal is to give effect to the written expression of the parties' intent. *Id.* We must read the provision in its entirety, striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative. *Id.* at 325.

 The forum selection provision in each agreement applied to "[a]ny dispute arising under or in connection with" the agreement and "any claim affecting its validity, construction, effect, performance or termination." This selection clause encompasses any dispute connected to the agreement. My Café's petition asserted causes of action for fraudulent inducement, anticipatory breach of contract, and breach of contract. Pleading alternative noncontractual theories of recovery will not alone avoid a forum selection clause if those alternative claims arise out of the contractual relations and implicate the contract's terms. *Accelerated*, 925 S.W.2d at 72–73 & n. 7. When all the claims arise out of the parties' contractual relations and implicate the contract's terms, the forum selection clause will encompass all the causes of action relating to the agreement. *See id.* Here, the fraudulent inducement issues raised by the pleading relate to the agreements.

Nevertheless, My Café asserts that the holdings of *Southwest Intelecom,* 997 S.W.2d at 324, and *Busse v. Pacific Cattle Feeding Fund # 1, Ltd.,* 896 S.W.2d 807, 812–13 (Tex.App.-Texarkana 1995, writ denied), provide that, when allegations of fraud in the inducement are asserted, Texas will not enforce the forum selection clause. Each of these cases involved the interpretation of forum selection clauses distinguishable from the one in My Café's agreements. In *Southwest Intelecom,* the court did not decide that, because fraud in the inducement was alleged, the forum selection clause would not be enforced. In construing the clause, the court held that the clause did not mandate that all suits related to the agreements between the parties be brought in a certain jurisdiction. *Southwest Intelecom,* 997 S.W.2d at 326. Likewise, *Busse* involved the interpretation of its forum selection clause. In *Busse,* the forum selection clause provided:

> This agreement and the rights and obligations of the parties arising hereto shall be construed in accordance with the laws of the State of Iowa, with venue in [certain Iowa counties].

*Busse,* 896 S.W.2d at 812–13. The *Busse* provision only related to contract disputes. *Id.* at 813. In fact, the fraudulent inducement cause of action was against an individual who was not a party to the contract. Thus, when construction of the rights and liabilities of the parties under the contract is not involved, the court's statement that a forum selection clause does not apply to a tort action alleging that the plaintiff was induced by misrepresentations to enter into the contract is made in the context of a provision that does not apply to related causes of action and an attempt to enforce the provision against a person who was not a party to the contract. *See id.* at 813. Thus, under the facts of *Busse,* it was significant that the actions arose from an alleged fraud and not from interpretation of a contract. We conclude that My Café's reliance on these cases is misplaced.

▆▆▆ Accordingly, simply alleging fraud in the inducement of a contract is not sufficient to make a forum selection clause unenforceable. We must look at the forum selection provision. When, as in this case, the forum selection clause encompasses all causes of action concerning the contract, the claim that a party was fraudulently induced to enter the contract does not avoid the forum selection clause.

## CONCLUSION

Because we conclude that the forum selection clause in the agreements was valid and applied to the fraudulent inducement claims, the trial court did not abuse its discretion in dismissing My Café's action. We resolve My Café's issue against it and affirm the judgment of the trial court.