**Petition for Writ of Mandamus Conditionally Granted, in Part, and Denied, in Part, and Opinion filed July 16, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-15-00261-CV

### IN RE SHELBY LONGORIA, Relator

ORIGINAL PROCEEDING
WRIT OF MANDAMUS
Probate Court No. 1
Harris County, Texas
Trial Court Cause No. 414270

## OPINION

On March 25, 2015, relator Shelby Longoria filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52. In the petition, Shelby asks this court to compel the Honorable Loyd Wright, presiding judge of Probate Court No. 1 of Harris County, to set aside his February 18, 2015 order denying Shelby's motion to dismiss the claims of real

party in interest, Adriana Longoria, based on a forum-selection clause. We conditionally grant the petition for writ of mandamus, in part, and deny it, in part.

## I. BACKGROUND

Eduardo Longoria, Sr., a Mexican citizen and businessman, was the father of Shelby Longoria, Adriana Longoria, Eduardo Longoria, Jr. ("Wayo"), and Sylvia Dorsey. In 2002, Eduardo transferred shares of his two Mexican holding companies, Vertice Empresarial, S.A. de C.V. and Inmuebles y Terrenos, S.A. de C.V. (the "Mexican companies"), to a trust administered by a Mexican bank. Banca Afirme Grupo Financiero. Eduardo designated Shelby as 60% beneficiary and Wayo 40% beneficiary of this trust, which the parties describe as the "Afirme Trust." At the same time, Eduardo executed a new will, naming Shelby as executor. Eduardo also signed a "Carta de Voluntad," or "Wish Letter," granting Sylvia and Adriana each $3,000,000 in cash to be distributed over time by the Afirme Trust. In December 2002, Eduardo and Adriana executed an "Acuerdo Privado," or "Private Agreement," providing that Adriana would receive $3,000,000 from the operating cash flow generated by the Mexican companies.

Eduardo died in 2005. Dorothy Longoria, Eduardo's wife and the mother of the children, died in 2012. On May 6, 2013, Tommy Dorsey, Sylvia's husband and executor of Dorothy's estate, sued Shelby for a demand for an accounting and breach of fiduciary duty to Dorothy, alleging that Shelby had diverted her community property interests to himself. Specifically, Tommy alleged, among other things, that (1) Shelby had induced Eduardo into signing the 2002 Afirme Trust, into which Eduardo conveyed all of his and Dorothy's shares in the Mexican companies and of which he made Shelby and Wayo the beneficiaries; and (2)

2

Shelby had induced Eduardo into signing the 2002 will, leaving all of Eduardo's remaining property to Shelby and Wayo.

On June 18, 2013, Shelby filed a will contest, alleging that Sylvia and Adriana had exerted undue influence over Dorothy in connection with her will, which divided Dorothy's estate equally between Adriana and Sylvia and named Tommy executor, and that Dorothy lacked the capacity to execute the will. Shelby also sought the removal of Tommy as executor. On August 23, 2013, Shelby filed a third-party petition, alleging that Sylvia and Adriana were responsible in contribution for any damages found owing by Shelby to the estate.

Adriana answered the will contest on December 4, 2013, and filed counterclaims against Shelby on January 6, 2014. Adriana amended her counterclaims on December 11, 2014, February 5, 2015, and February 11, 2015. Adriana alleged that Shelby induced Eduardo into entering the Private Agreement and into believing that it would be a fair allocation of the estate. She also counterclaimed for tortious interference with inheritance rights, breach of fiduciary duty, tortious inference with the Private Agreement, breach of the obligation to perform the Private Agreement, and breach of the agreement to pay Adriana $100,000 upon Dorothy's death and sought a declaration that an agreement called the Donation Agreement is not an enforceable contract.[1]

On January 14, 2015, Shelby filed a motion to dismiss Adriana's counterclaims based on a forum-selection clause in the Private Agreement that provides for exclusive venue in the courts of Reynosa, Tamaulipas, Mexico.

_____

[1] Adriana does not explain in her third amended petition what the Donation Agreement is or identify the parties to it.

3

In response to the motion to dismiss, Adriana contended that (1) the forum-selection clause does not apply to her counterclaims; (2) the forum-selection clause is unreasonable and unjust in light of a pre-existing fiduciary relationship between Shelby and Adriana, where the agreement was made, where the parties resided, and the unacceptability of the Mexican forum; (3) the forum-selection clause is unenforceable because it was procured through fraud and overreaching by Shelby; and (4) Shelby waived his right to enforce the forum-selection clause by litigating Adriana's counterclaims in the trial court for a year without invoking the clause.

The trial court held a hearing on Shelby's motion to dismiss on February 12, 2015, and signed the order denying Shelby's motion on February 18, 2015.

## II. MANDAMUS STANDARD OF REVIEW

To be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion; and (2) the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). A trial court abuses its discretion when it fails to properly interpret or apply a forum-selection clause. *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010) (orig. proceeding) (per curiam). An appellate remedy is inadequate when a trial court improperly refuses to enforce a forum-selection clause because allowing the trial to go forward will vitiate and render illusory the

4

subject matter of an appeal, i.e., trial in the proper forum. *Id.* Thus, mandamus relief is available to enforce an unambiguous forum-selection clause. *Id.*

### III. Scope of the Forum-Selection Clause

Shelby argues that most of Adriana's claims fall within the scope of the forum-selection clause in the Private Agreement.[2]

Forum-selection clauses are generally enforceable and presumptively valid. *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam); *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 675 (Tex. 2009) (orig. proceeding) (per curiam). A trial court abuses its discretion in refusing to enforce a forum-selection clause unless the party opposing enforcement meets its heavy burden of showing that (1) enforcement would be unreasonable or unjust; (2) the

---

[2] Shelby contends that, as a non-signatory to the forum-selection clause, he can enforce the clause under estoppel principles. Even though Adriana has not argued that Shelby cannot enforce the forum-selection clause in the Private Agreement based on the fact that he is not a signatory to the Agreement we, nonetheless, address this issue.

Equitable estoppel theories allowing non-signatories to enforce arbitration agreements also apply to forum-selection clauses. *Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.*, 234 S.W.3d 679, 693−94 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d, 605, 622−24 (Tex. App.—Houston [1st Dist.] 2005, no pet.)). "A person who has agreed to resolve disputes with one party in a particular forum may be required in some circumstances to resolve related disputes with other parties in the same forum." *Smith v. Kenda Capital, LLC*, 451 S.W.3d 453, 458 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Under the theory of direct benefits estoppel, a nonsignatory may enforce a forum-selection clause that contains other terms on which the signatory plaintiff must rely to prosecute its claims. *Id.*; *In re Cornerstone Healthcare Holding Grp., Inc.*, 348 S.W.3d 538, 544−45 (Tex. App.—Dallas 2011, orig. proceeding). Direct benefits estoppel applies when a signatory's claim against a nonsignatory references or presumes the existence of the written agreement containing the clause. *Smith*, 451 S.W.3d at 458. Adriana's claims against Shelby clearly reference or presume the existence the agreement containing the forum-selection clause, i.e., the Private Agreement. Therefore, Shelby may enforce the forum-selection clause in the Private Agreement to the extent that it encompasses Adriana's claims.

clause is invalid for reasons of fraud or overreaching; (3) enforcement would contravene a strong public policy of the forum where the suit was brought; or (4) the selected forum would be seriously inconvenient for trial. *Laibe Corp.*, 307 S.W.3d at 316; *In re ADM Inv. Servs., Inc.*, 304 S.W.3d 371, 375 (Tex. 2010) (orig. proceeding).

The court must first determine whether the claims fall within the scope of the forum-selection clause. *Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 687−88. The court bases its determination on the language of the clause and the nature of the claims purportedly subject to the forum-selection clause. *Id.* at 688. If the claims fall within the scope, the court must determine whether to enforce the clause. *Id.*

In construing a contract, we must ascertain and give effect to the parties' intentions as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). If a contract is worded so that it can be given a certain or definite meaning then it is unambiguous, and the court will construe it as a matter of law. *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012). If, after applying the pertinent rules of contract construction, the contract is subject to two or more reasonable interpretations, the contract is ambiguous. *Id.* The court must enforce an unambiguous contract as a matter of law without considering parol evidence. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam).

The Private Agreement between Eduardo and Sylvia provides the following, in relevant part:

6

**First.  Regarding "THE TRUST."**  The parties recognize the validity and scope of the "TRUST", and in this regard they are in agreement with all its terms and conditions, and therefore declare that the agreement is the final and definitive will of the parties, and therefore, they comply with all terms and agree that the shares contributed to it are to be transferred to the designated beneficiaries.

**Second.  Payment to ADRIANA LONGORIA KOWALSKI.**  It is the will of her father that the amount of $3,000,000.00 (three million U.S. dollars) be delivered to his daughter ADRIANA LONGORIA KOWALSKI, from the operating cash flow generated by the companies represented by the shares contributed to the "TRUST", or by their subsidiaries, and therefore it is the obligation of EDUARDO AND SHELBY LUIS LONGORIA KOWALSKI in the terms mentioned below:

On the date this Agreement is signed, the balance to be delivered to ADRIANA LONGORIA KOWALSKI, in terms of the preceding paragraph, amounts to the sum USD $2,069,100.00 (two million sixty-nine thousand one hundred U.S. dollars), according the statement of account that is attached hereto.

By virtue of the foregoing, an annual amount of $150,000.00 (one hundred fifty thousand U.S. dollars) of principal and interest will be given to ADRIANA LONGORIA KOWALSKI, in monthly installments of $12,500 (twelve thousand five hundred U.S. dollars) until the complete payment of the balance referred to above.  In addition, the balance payable shall earn a normal interest rate of 75% (seventy-five percent) of the "prime rate" published by the Wall Street Journal.

\*     \*     \*

**Third.  Final and Definitive Will of the Parties.**  The parties state that this Agreement is the final and definitive will of the parties; therefore, they are in agreement with all its terms, further stating that there is no mistake, fraud, bad faith, or any defect of will that might affect their understanding or decision regarding the content.

7

The TRUST's obligation to deliver the mentioned quantities to ADRIANA LONGORIA KOWALSKI, in the terms set forth herein, shall continue in effect until full payment, acknowledging that, after payment of the amounts referred to in this Agreement, ADRIANA LONGORIA KOWALSKI shall be satisfied in relation to any present or future obligation charged to the "TRUST" assets or to those of Messrs. EDUARDO and SHELBY LUIS LONGORIA KOWALSKI.

**Fourth.  Jurisdiction and Mexican Law.**  This Agreement is established under the jurisdiction and laws of the United Mexican States.  Therefore, the parties exclusively submit to the laws of Mexico, thus they expressly waive the application of any law, regulation, provision or rule of any jurisdiction other than Mexico, which might correspond to them due to their residence, paternity, citizenship, domicile, kinship or commercial relationship.  Therefore, in the event of any interpretation, dispute, or any aspect related to this Trust, they expressly submit to the court of the city of Reynosa, Tamaulipas, Mexico.

Likewise, the issuance of any law, regulation or provisions in jurisdictions outside the Republic of Mexico, or any act performed outside the national territory by any party seeking to (i) impose restrictions on this Agreement or to impose the performance of acts different from the purposes for which it is authorized[;] (ii) impose taxes, duties or tax burdens other than those under Mexican Law; (iii) expropriate, limit, confiscate, seize, dispose of, freeze or otherwise affect the rights of the Agreement based on federal, state or municipal laws, outside the jurisdiction of the Republic of Mexico, shall not apply to this Agreement, in all cases the jurisdiction and laws of the Republic of the United Mexican States being applicable under the terms of the previous paragraph.

Having seen and read the foregoing, the parties sign it in the city of Reynosa, Tamaulipas, on DECEMBER 17th, 2002.

The Fourth Clause of the Private Agreement contains two paragraphs that address the choice of forum and choice of law provisions.  The first paragraph

8

provides the following, with respect to the forum selected by the parties: "in the event of any interpretation, dispute, or an aspect related to *this Trust*, they expressly submit to the courts of the city of Reynosa, Tamaulipas, Mexico."[3]

Adriana contends that the forum-selection clause does not apply to the Private Agreement because it specifically applies to the Afirme Trust. Eduardo created the Afirme Trust, into which he placed his and Dorothy's shares of the Mexican companies. The Third Clause of the Private Agreement expressly states that the source of the payments made to Adriana under the Agreement was the Afirme Trust. Adriana specifically alleged that (1) Shelby induced Eduardo into entering various transactions that would increase his own inheritance while decreasing the inheritances of Wayo, Sylvia, and Adriana; and (2) Shelby induced Eduardo into entering the Private Agreement and into believing that this would be a fair allocation of his estate. Adriana further asserted that Shelby did not make the required payments from the Afirme Trust, but from Eduardo's funds and then from Dorothy's funds after the death of Eduardo. Shelby ceased making any payments in October 2010.

In the First Clause of the Private Agreement, Adriana recognized the scope and validity of the Afirme Trust and that the Mexican companies held in the Trust would be the source of money to make the payments to her under the Private Agreement. Adriana acknowledged this in her response to the mandamus petition.

The Afirme Trust is the designated source of funds to pay Adriana under the Private Agreement. Without the Afirme Trust, there would be no causes of action against Shelby for interference with inheritance rights, tortious interference with

---

[3] Emphasis added.

the Private Agreement, breach of his contractual obligation to perform the Private Agreement, or breach of his fiduciary duty related to the purported trust relationship created by the Private Agreement.

Adriana contends that, even if the forum-selection clause applies to the Private Agreement, which she implicitly conceded would encompass her claims for tortious interference with the Private Agreement and breach of the contractual obligation to perform the Private Agreement, it still does not apply to her claim for tortious interference with inheritance rights. Adriana has focused on the forum-selection clause as applying to the Private Agreement. As explained above, the forum-selection clause is applicable to Adriana's claims because she would have no grounds for her allegations without the Afirme Trust.

Moreover, courts have consistently held the language "*any interpretation, dispute, or any aspect related to*" is broad. *See, e.g.*, *TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 750, 759 (N.D. Tex. 2009) ("Forum selection clauses cover claims 'relating to' an agreement are broad in scope."); *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 701 (Tex. App.—Dallas 2010, no pet.) ("The phrase 'relates to,' in particular, is recognized as a very broad term.") (internal quotes and citations omitted); *see also Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 263 (Tex. App.—Austin 2010, pet. dism'd) (holding that each fraud, breach of fiduciary duty, and securities claim "arises under" or "relates to" the stock sale and, therefore, was encompassed by the forum-selection clause). Adriana, furthermore, cannot plead tort claims to avoid the application of the forum-selection clause if those causes of action relate to the Afirme Trust. *See My Café-CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 866 (Tex. App.—Dallas 2003, no

pet.) ("Pleading alternative noncontractual theories of recovery will not alone avoid a forum selection clause if those alternative claims arise out of the contractual relations and implicate the contract's terms.").

Adriana does not address her claim for breach of the fiduciary duty that allegedly arose prior to the existence of the Private Agreement. We, nonetheless, address whether Adriana's pre-contractual tort claim is subject to the forum-selection clause. This court and other courts have held that fraud-in-the-inducement claims can be subject to a forum-selection clause because it is a dispute involving the parties' agreement. *See, e.g.*, *Clark v. Power Mktg. Direct, Inc.*, 192 S.W.3d 796, 799−800 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *My Café-CCC, Ltd.*, 107 S.W.3d at 867; *see also Accelerated Christian Educ. Inc. v. Oracle Corp.*, 925 S.W.2d 66, 73 (Tex. App—Dallas 1996, no writ), *overruled in part on other grounds by In re Tyco Elecs. Power Sys., Inc.*, No. 05-04-01808-CV, 2005 WL 237232, at *4 (Tex. App.—Dallas Feb. 2, 2005, orig. proceeding [mand. denied]) (mem. op.) (stating that pre-contractual claims for misrepresentations made before the execution of the contract are not excluded from the scope of the forum-selection clause merely because the conduct took place before the contract came into existence). This court, however, did not address whether a forum-selection clause necessarily encompasses all pre-contractual claims. *Clark*, 192 S.W.3d at 800.

As explained above, the forum-selection clause is very broad, encompassing "any interpretation, dispute, or any aspect related to this Trust." "When all the claims arise out of the parties' contractual relations and implicate the contract's terms, the forum selection clause will encompass all the causes of action relating to

the agreement." *My Café-CCC, Ltd.*, 107 S.W.3d at 866. Adriana claims that Shelby had assumed a fiduciary duty to her by making payments to her from the Mexican companies ten years prior to the execution of the Private Agreement. Those payments then continued from the funds of the Afirme Trust. Adriana's pre-contractual claim for breach of fiduciary duty implicates the Afirme Trust and is subject to the forum-selection clause. There would be no breach of fiduciary duty without the trust.

Adriana further asserts that the forum-selection clause does not apply to her claim for breach of the promise between Shelby and Dorothy to pay her $100,000 upon Dorothy's death. Shelby concedes that Adriana's claim for the breach of the promise to pay her $100,000 upon Dorothy's death does not fall within the scope of the forum-selection clause.

As to her request for a declaratory judgment that the January 11, 2005 Donation Agreement is unenforceable, Adriana first pleaded her request the day before the hearing on Shelby's motion to dismiss. Adriana's petition does not explain what the Donation Agreement is, no copy of the agreement was attached to the petition, and there was no briefing on the applicability of the forum-selection clause to this claim. Shelby, however, contends in his mandamus petition that the agreement bears directly on the manner in which payments would be made under the Private Agreement. Shelby suggests the request for a declaratory judgment was not before the court and "[t]he trial court will be able to address the proper venue for this claim [regarding the Donation Agreement] upon receiving direction from this Court relating to the other claims." The trial court stated in its order that it considered the pleadings of the parties and did not carve out any claims that were

12

not being addressed in its ruling on the motion to dismiss. We do not have enough information from the mandamus record to determine that the forum-selection clause encompasses Adriana's claim that Shelby breached the Donation Agreement.

In summary, we hold that the forum-selection clause applies to Adriana's claims for (1) tortious interference with inheritance rights; (2) breach of fiduciary duty; (3) tortious interference with the Private Agreement; and (4) breach of the contractual obligation to perform the Private Agreement. The forum-selection clause, however, does not apply to Adriana's claim that Shelby breached the agreement to pay Adriana $100,000 upon Dorothy's death and, based on this record, we cannot say that Adriana's claim that Shelby breached the Donation Agreement falls within the scope of the forum-selection clause.

## V. OBJECTIONS RAISED BY ADRIANA

### A. Adriana's Objections to the Mandamus Record

Adriana complains that Shelby cites, in his mandamus petition, materials that were not presented to the trial court in connection with the motion to dismiss, which, therefore, should not be considered in the mandamus proceeding. Adriana refers to most of the items contained in the mandamus record filed by Shelby, including pleadings filed by the parties, a motion to quash, the reporter's record of the hearing on a previously denied motion to dismiss for forum non conveniens, and filings related to the motion to dismiss for forum non conveniens. The trial court stated in the order that it considered, among other things, "the pleadings on file." Moreover, a relator must file a "certified or sworn copy of every document that is material to the relator's claim for relief and that was filed in any underlying

13

proceeding." Tex. R. App. P. 52.7(a)(1). There is nothing improper about the items Shelby included in the mandamus record, and we are not aware of any authority for penalizing a relator for erring on the side of over-inclusion in connection with a mandamus record. Therefore, we reject Adriana's contention that we cannot consider most of the items in the record in our review of the mandamus petition.

**B.      Objections to Evidence Attached to the Motion to Dismiss**

Adriana objected to Exhibits 3 and 3A, which were the October 15, 2002 "Banca Afirme Fideicomiso No. 194-2", the Afirme Trust, and a certified translation of the Afirme Trust, respectively. Johnny Carter, one of Shelby's attorneys, stated, in his affidavit submitted in support of Shelby's motion to dismiss, in relevant part:

> 5.      Attached as Exhibit 3 is a true and correct copy of a document dated October 15, 2002 titled "Banca Afirme Fideicomiso No. 194-2."
>
> 6.      Attached as Exhibit 3A is a true and correct copy of a certified translation of Banca Afirme Fideicomiso No. 194.2.

Adriana argued that Carter did not testify that Exhibit 3 was a true and correct copy of the original or that he had personal knowledge of the execution or terms of the original, and, because Exhibit 3A was a translation of Exhibit 3, Exhibit 3A could "have no better claim of authenticity than Exhibit 3." Adriana requested that the trial court strike and disregard Exhibits 3 and 3A.

Shelby asserts that Adriana waived her objections to Exhibits 3 and 3A because she did not obtain a ruling from the trial court. Shelby contends that Rule 166a standards for summary judgment proceedings govern the motion to dismiss

14

for improper venue. *See* Tex. R. Civ. P. 166a. Courts look to cases on arbitration for guidance on forum-selection clauses. *See, e.g.*, *Smith*, 451 S.W.3d at 457 ("Reference to cases addressing the applicability of arbitration clauses is appropriate when examining whether particular claims or parties fall within a forum selection clause's reach."); *In re Boehme*, 256 S.W.3d 878, 884 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) ("In deciding whether a party has waived a forum-selection clause, the Supreme Court has repeatedly resorted to cases involving arbitration agreements.").

In the arbitration context, the trial court conducts a summary proceeding to determine the applicability of an arbitration clause based on the parties' affidavits, pleadings, discovery, and stipulations. *In re Estate of Guerrero*, No. 14-13-00580-CV, — S.W.3d —, 2015 WL 1884068, at *3 (Tex. App.—Houston [14th Dist.] Apr. 23, 2015, pet. filed) (en banc). The procedure is similar to a motion for summary judgment and is subject to the same evidentiary standards. *Id.*

Under the summary judgment standard, copies of documents must be authenticated to constitute competent summary judgment evidence. *Id.* at *6. A properly sworn affidavit stating that the attached documents are true and correct copies of the original authenticates the copies so they may be considered as summary judgment evidence. *Id.*

A defect in the form of authentication of documents, i.e., a defect in the affidavit attempting to authenticate the attached documents, is waived without an objection in, and a ruling from, the trial court. *Id.* at *9; *see also Hicks v. Humble Oil & Ref. Co.*, 970 S.W.2d 90, 93 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ("Appellants objected to Exxon's exhibits as not being properly

15

authenticated but did not get a ruling of the trial court on any of their objections. By failing to secure rulings on their objections to Exxon's summary judgment proof, appellants have waived any complaint on this appeal as to their admissibility into evidence."). Here, Adriana objected to the form of the authentication and, therefore, was required to obtain a ruling on her objections.

Adriana asserts that the trial court implicitly sustained her objections by denying Shelby's motion to dismiss. Shelby responds that a ruling on the merits of a summary judgment motion is not an implicit ruling on evidentiary objections to summary judgment evidence and the prevailing party cannot avoid waiver of its evidentiary objections by arguing that it received a favorable ruling on the merits of the motion. *See Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 604 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that the trial court's granting of a summary judgment is not an implicit ruling on the movant's objection to the nonmovant's summary-judgment evidence); *Duncan-Hubert v. Mitchell*, 310 S.W.3d 92, 100 (Tex. App.—Dallas 2010, pet. denied) (holding that, where movant objected to nonmovant's evidence, it could not be inferred that the trial court sustained movant's objections merely by granting summary judgment);

Even if the summary judgment procedure were not followed in the context of a motion to dismiss for a forum-selection clause, to preserve a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion that was sufficiently specific and the trial court (1) ruled on the request, objection, or motion either expressly or implicitly or (2) refused to rule on the request, objection, or motion, and the complaining party

16

objected to the refusal. Tex. R. App. P. 33.1(a). There is nothing in the record to suggest that the trial court implicitly ruled on Adriana's objections to Shelby's exhibits submitted in support of his motion to dismiss. At the hearing, there was argument concerning the Afirme Trust, but Adriana did not object to the authentication of the Afirme Trust.

Adriana also objected to Exhibit 4 to the motion dismiss, which was the affidavit of Shelby's Mexican law expert, Dr. Carlos Gabuardi, and in particular paragraph 4, subparagraphs b, c, and d, and paragraphs 11−19 because they contained opinions of the meaning and legal effect of the ordinary terms of a contract, which are questions of law for the court, and the parol evidence rule prohibits the admission of extrinsic evidence that alters the terms of a written contract. Adriana further objected that the remainder of Gabuardi's affidavit was irrelevant, asked the trial court to sustain her objections, and strike and disregard Gabuardi's affidavit.

An objection to a defect in the substance of an affidavit may be raised for the first time on appeal. *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 670 (Tex. App.—Houston [14th Dist. 2012, pet. denied). The complained of portions of Gabuardi's affidavit are mostly his interpretations of the Private Agreement and the forum-selection clause, which are questions of law for the court. *See Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 339 (Tex. App.—San Antonio 2000, pet. denied) ("Expert testimony regarding the legal interpretation of an unambiguous agreement encroaches upon the trial court's province to determine the correct legal interpretation."). No ruling on an objection was required to preserve error on those portions of Gabuardi's affidavit because they offered legal

17

conclusions. *See Ramirez v. Transcon. Ins. Co.*, 881 S.W.2d 818, 829 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding that "[a]n objection to an affidavit on the grounds that it states only a legal conclusion is one that relates to a defect of substance," which may be raised for the first time on appeal).

Even though Adriana did not waive her objections to Gabuardi's affidavit, we need not address her objections in light of the well-settled rules for contract construction. We have considered the interpretation of the forum-selection clause as a question of law, reviewing the trial court's interpretation de novo, without considering parol evidence. *See David J. Sacks, P.C.*, 266 S.W.3d at 450.

## VI. ADRIANA'S DEFENSES TO THE ENFORCEABILITY OF THE FORUM-SELECTION CLAUSE

### A. Whether the Forum-Selection Clause is Unreasonable or Procured by Fraud

Adriana argues the forum-selection clause in the Private Agreement is unreasonable because it contravenes a pre-existing and overarching fiduciary relationship between Shelby and her and it was procured by fraud. Adriana claims a confidential relationship arose between Shelby and her, prior to the execution of the Private Agreement, because Shelby had assumed the obligation to make payments to her from the revenue of the Mexican companies he had been managing for a number of years. According to Adriana, because informal fiduciary relationships are not recognized in Mexico, the application of the forum-selection clause and the choice-of-law clause[4] would deprive her of rights, which

---

[4] The choice-of-law clause was not the subject of Shelby's motion to dismiss.

had vested prior to the Private Agreement's existence. Adriana claims that Shelby, in his role as a fiduciary, failed to make her aware of the Private Agreement's negating a potential cause of action. Also based on this claimed fiduciary relationship, Adriana asserts that she was fraudulently induced into executing the forum-selection clause.

No duty of disclosure arises without evidence of a confidential relationship. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674−75 (Tex. 1998). A failure to disclose information may constitute fraud where there is a duty to disclose. *Bradford v. Vento*, 48 S.W.3d 749, 754−55 (Tex. 2001). "Fraudulent inducement to sign an agreement containing a dispute resolution agreement such as an arbitration clause or forum-selection clause will not bar enforcement of the clause unless the specific clause was the product of fraud or coercion." *Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008) (orig. proceeding) (per curiam). The fraud or overreaching in question must involve the negotiation of the forum-selection clause itself. *Young*, 336 S.W.3d at 266−67.

However, a party who signs a contract is presumed to know its contents and its legal effects. *Profits Assocs., Inc.*, 286 S.W.3d at 923; *Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 791 (Tex. App.—Austin 2002, pet. dism'd). A party cannot avoid a contract clause by simply failing to read it. *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) (orig. proceeding) (per curiam). Evidence that a party concealed a forum-selection clause combined with evidence proving that concealment was part of an intent to defraud a party may be sufficient to invalidate the clause." *Profits Assocs., Inc.*, 286 S.W.3d at 923.

Adriana, in her affidavit in support of her response to Shelby's motion to dismiss, claimed that "Shelby discouraged me from reading the ACUERDO PRIVADO. He did not say to me that it contained a clause saying that I submitted to the courts of the city of Reynosa, Tamaulipas, Mexico in the event of any interpretation, dispute, or other aspect of the ACUERDO PRIVADO, or words to that effect, and I have had no such understanding, either when I signed it or since then." Adriana does not claim that Shelby prevented her from reading the forum-selection clause. An allegation that Shelby merely "discouraged" her from reading the Private Agreement before she signed it is not sufficient to establish fraud. *See id.* at 923−24 (rejecting relator's argument that forum-selection clause was procured by fraud or overreaching because relator was not shown the clause); *U.S. Home Corp.*, 236 S.W.3d at 764 (holding there was no evidence of fraud as relators conceded that no one prevented them from reading the back-side of a single sheet contract that contained the arbitration clause).

Moreover, Eduardo and Adriana agreed that the Private Agreement was the "final and definitive will of the parties" and there was "no mistake, fraud, bad faith or any defect of will that might affect their understanding or decision regarding the content." *See In re Emex Holdings, LLC*, No. 13-11-00145-CV, 2013 WL 1683614, at *8 (Tex. App.—Corpus Christi Apr. 18, 2013, orig. proceeding [mand. denied]) (mem. op. en banc) (noting that the parties stated in the agreement that there was no fraud, bad faith, injury, or any other cause of nullity established by law and holding that the real parties had not clearly shown that the forum-selection clause was the product of fraud or overreaching).

20

Here, Adriana's claim that she trusted Shelby as fiduciary to tell her that the forum-selection clause would negate a potential cause of action for breach of fiduciary duty in Mexico, does not render a forum-selection clause unenforceable. *See id.* (holding parties, who did not read the forum-selection clause before signing the agreement because they had instructed the attorney to change the clause and trusted him to do so, were charged with knowledge of the forum-selection clause). Not being able to bring certain causes of action in the designated forum is not a reason to avoid enforcement of a forum-selection clause. *Lyon Fin. Servs., Inc.*, 257 S.W.3d at 234 (holding inability to assert a claim for usury under Pennsylvania law did not create a public policy reason to deny enforcement of the forum-selection clause).

Moreover, Adriana has not shown any evidence that Shelby knew that she would not be able to maintain claims for breach of fiduciary duty based on an informal confidential relationship under Mexican law. A claim based on the failure to disclose information necessarily presumes that the party with the duty to speak has knowledge of the facts. *Cf. Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.*, 217 S.W.3d 653, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (stating that the failure to disclose information does not constitute fraud unless there is a duty to disclose information). Shelby had no duty to disclose facts of which he was not aware. *See HTM Rests., Inc. v. Goldman Sachs & Co.*, 797 S.W.2d 326, 329 (Tex. App.—Houston [14th Dist.] 1990, writ denied) ("A party cannot be guilty of fraudulently or intentionally concealing facts of which he is not aware. Although silence can be a form of misrepresentation, the duty to speak does not arise until the silent party is aware of the facts.") (citations omitted).

Adriana has not shown that Shelby had a duty to disclose to her the forum-selection and choice-of-law provisions in the Private Agreement and their consequences. Adriana further has not demonstrated that the forum-selection and choice-of-law provisions were procured by fraud or overreaching.

**B. Whether Reynosa, Tamaulipas, Mexico is a Seriously Inconvenient Forum**

Adriana further contends that the forum-selection clause is unenforceable as seriously inconvenient such that she will be denied her day in court because the specified forum—Reynosa, Tamaulipas, Mexico—is "one of the most dangerous places in the world." When inconvenience in litigating in the chosen forum is foreseeable at the time of contracting, the challenger must show that the trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. *ADM Inv. Servs., Inc.*, 304 S.W.3d at 375. "By entering into an agreement with a forum-selection clause, the parties effectively represent to each other that the agreed forum is not so inconvenient that enforcing the clause will deprive either party of its day in court, whether for cost or other reasons." *Int'l Profit Assocs., Inc.*, 274 S.W.3d at 680. Adriana agrees that financial difficulties and inconvenience to the witnesses are not sufficient to avoid application of the forum-selection clause, but asserts that the dangerous conditions in Reynosa render the forum seriously inconvenient. *See Lyon Fin. Servs., Inc.*, 257 S.W.3d at 254; *In re Zotec Partners, LLC*, 353 S.W.3d 533, 537 (Tex. App.—San Antonio 2011, orig. proceeding).

Relying on forum-non-conveniens cases, Shelby contends that purported dangerous conditions are not sufficient to avoid enforcement of a forum-selection

clause in the absence of evidence that such conditions have an adverse impact on the operation of the judiciary.[5] Shelby presented uncontroverted evidence that Adriana, Sylvia, and Tommy have hired attorneys and filed claims against him in Tamaulipas, Adriana's Mexican law expert has handled litigation in Tamaulipas, and Reynosa has a fully functioning court system. Adriana responds that forum non conveniens cases are not applicable in the forum-selection clause analysis. We disagree. There is no reason not to consider forum non conveniens cases, which have addressed whether political unrest or other conditions render the alternative forum inadequate.

---

[5] *See, e.g.*, *Paolicelli v. Ford Motor Co.*, 289 Fed. App'x 387, 391 (11th Cir. 2008) ("absent evidence the political unrest has affected the Columbian judicial system or would affect litigation of this case, this fact is not sufficient to outweigh the other factors that weigh in favor of dismissal"); *Rustal Trading US, Inc. v. Makki*, 17 Fed. App'x 331, 337 (6th Cir. 2001) (holding political unrest in a foreign jurisdiction did not render the forum inadequate absent some showing that the unrest had had an adverse effect on the judicial system there); *Transunion Corp v. PepsiCo, Inc.*, 811 F.2d 127, 129 (2d Cir. 1987) (holding there had been no showing that political unrest in the Philippines had an adverse impact on the judicial system); *Miralda v. Tidewater, Inc.*, Civ. A. No. 11-1170, 2012 WL 3637845, at *4 (E.D. La. Aug. 23, 2012) (observing that several federal appellate courts had uniformly concluded that political unrest of the alternative forum had not per se rendered the forum inadequate in the forum non conveniens context absent some showing that this unrest negatively affected the judicial system of the country or the litigation at issue); *Morales v. Ford Motor Co.*, 313 F. Supp. 2d 672, 682 (S.D. Tex. 2004) (rejecting contention that political situation in Venezuela would make trial in U.S. more convenient because of "paucity of evidence and information submitted to the court" on the issue); *In re Bridgestone/Firestone, Inc., Tires Prods. Liability Litig.*, 190 F. Supp. 2d 1125, 1143−44 (S.D. Ind. 2002) (considering physical threats to litigants and witnesses arising from then current volatile political situation in Columbia—"of particular interest [was] the fact that, in the recent past, judicial officers have been the targets of guerilla violation"—to be a factor weighing in favor of retaining jurisdiction); *In re BPZ Res., Inc.*, 359 S.W.3d 866, 879 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding [mand. denied]) (holding that political unrest alone, was insufficient to establish that Peru was an inconvenient forum)

Under these circumstances, Adriana has not shown that litigating in Reynosa is so gravely difficult and inconvenient that she will for all practical purposes be deprived of her day in court.

## C.    Waiver of the Right to Enforce the Forum-Selection Clause

Adriana asserts that Shelby has waived his right to enforce the forum-selection clause. Adriana pleaded four of her six counterclaims on January 9, 2014, and added two claims in her amended pleadings on December 11, 2014, February 5, 2015, and February 11, 2015. Shelby litigated those four original causes of action for a year, including pleading affirmative defenses based on Texas law, before seeking dismissal of Adriana's claims pursuant to the forum-selection clause.

A party may waive the right to enforce a forum-selection clause. *Boehme*, 256 S.W.3d at 884. In determining waiver of a forum-selection clause, the court may look to arbitration cases for guidance. *Id.* The test for waiver of an arbitration clause is whether (1) the party seeking arbitration has "substantially invoked the judicial process," and (2) the party resisting arbitration suffered actual prejudice as a result. *Id.*

Waiver is primarily a function of intent and requires either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 393−94 (Tex. 2014). Whether a party has substantially invoked the judicial process depends on the totality of the circumstances. *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 445 S.W.3d 573, 575 (Tex. 2015) (per curiam).

24

Adriana contends that Shelby substantially invoked the judicial process by deposing her and serving her with written discovery requests and by having his own deposition taken and responding to Adriana's discovery requests. These limited actions do not establish that Shelby substantially invoked the judicial process such that he waived his right to enforce the forum-selection clause. *See In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 763−64 (Tex. 2006) (orig. proceeding) (per curiam) (holding the relators did not substantially invoke the judicial process by serving requests for disclosure, noticing four depositions, and sending a request for production); *In re AIU Ins. Co.*, 148 S.W.3d 109, 121 (Tex. 2004) (orig. proceeding) (holding the relator did not waive enforcement of the forum-selection clause by filing answer, requesting a jury, and paying the jury fee; *Boehme*, 256 S.W.3d at 885 (holding that deposing three witnesses, producing two witnesses for deposition, exchanging documents, and participating in a temporary injunction hearing did not constitute waiver of forum-selection clause).

Adriana also asserts that she has been prejudiced by Shelby's delay in seeking to enforce the forum-selection clause. Mere delay in moving to enforce the forum-selection clause does not constitute waiver. *Cf. Richmont Holdings, Inc.*, 455 S.W.3d at 576 (holding that moving to compel arbitration nineteen months after lawsuit was filed was not waiver of right to arbitrate); *Vesta Ins. Grp., Inc.*, 192 S.W.3d at 763−64 (holding that moving to compel arbitration two years after lawsuit was filed was not waiver of right to arbitrate).

Adriana contends that Shelby gained an advantage in this litigation by questioning her at her deposition about the Private Agreement and payments made pursuant to it. Shelby responds that he had been seeking to take Adriana's

25

deposition since June 2013, several months prior to Adriana filing her counterclaims. Shelby's counsel questioned Adriana about the Private Agreement because Adriana had initiated changes to Dorothy's will due to her dissatisfaction with the payments she received pursuant to the Private Agreement. Adriana cannot show prejudice from any discovery requests to which she responded as she chose to litigate in a forum not agreed to by the parties. *See In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 560 (Tex. 2004) (orig. proceeding) (per curiam) (holding that real party in interest could not show prejudice from any duplication of time or efforts in litigating case where it had initiated proceedings in a forum other that the one to which it had contractually agreed).

Adriana further argues that she suffered prejudice by Shelby's delay in invoking the forum-selection clause because the one-year statute of limitations in Mexico will limit her recovery of damages. Shelby points out that, because the last payment Adriana received under the Private Agreement was in October 2010, the delay from January 2014 to January 2015 is immaterial for limitations purposes in Mexico. Moreover, Adriana is complaining of the choice-of-law provision in the Private Agreement, which is not the subject matter of the trial court's order or this original proceeding. Adriana has not shown that she has been prejudiced by Shelby's delay in seeking to enforce the forum-selection clause. Therefore, Adriana has not established that Shelby waived his right to enforce the forum-selection clause.

## VII. CONCLUSION

We hold that Adriana's claims for tortious interference with inheritance rights, breach of fiduciary duty, tortious interference with the Private Agreement,

and breach of the contractual obligation to perform the Private Agreement fall within the scope of the forum-selection clause, but Adriana's claims for breach of the agreement to pay her $100,000 upon Dorothy's death and breach of the Donation Agreement do not. We further hold that Adriana has not established that the forum-selection clause was procured as a result of overreaching or fraud, that Reynosa, Taumalipas is a seriously inconvenient forum, or that Shelby waived his right to enforce the clause.

Thus, the trial court abused its discretion by denying Shelby's motion to dismiss based on the forum-selection clause contained in the Private Agreement as to Adriana's claims for tortious interference with inheritance rights, breach of fiduciary duty, tortious interference with the Private Agreement, and breach of the contractual obligation to perform the Private Agreement, and Shelby does not have an adequate remedy by appeal. The trial court did not abuse its discretion by denying Shelby's motion to dismiss as to Adriana's claims for breach of the agreement to pay her $100,000 upon Dorothy's death and breach of the Donation Agreement.

Accordingly, we conditionally grant the petition for writ of mandamus, in part, and direct the trial court to vacate its February 18, 2015 order to the extent that it denies Shelby's motion to dismiss as to Adriana's claims for tortious interference with inheritance rights, breach of fiduciary duty, tortious interference with the Private Agreement, and breach of the contractual obligation to perform the Private Agreement, and dismiss those claims. We deny the remainder of the petition as to Adriana's claims for breach of the agreement to pay her $100,000

upon Dorothy's death and breach of the Donation Agreement. The writ will issue only if the trial court fails to act in accordance with this opinion.


/s/     Tracy Christopher
        Justice

Panel consists of Justices Christopher, Donovan, and Brown.